HUDSON, SUPERINTENDENT, APPELLANT, *v.* PETROSURANCE, INC.,

APPELLEE, ET AL.

[Cite as *Hudson v. Petrosurance, Inc.,* **127 Ohio St.3d 54, 2010-Ohio-4505.**]

*No provision in the Insurers Supervision, Rehabilitation, and Liquidation Act, codified in R.C. Chapter 3903, authorizes payment of interest to any claimant.*

(No. 2009-1816 — Submitted May 26, 2010 — Decided September 29, 2010.)

APPEAL from the Court of Appeals for Franklin County, No. 08AP-1030,

2009-Ohio-4307.

_____

SYLLABUS OF THE COURT

The Insurers Supervision, Rehabilitation, and Liquidation Act, codified in R.C. Chapter 3903, establishes nine prioritized classes of claims that can be filed against an insurer's estate during liquidation and directs the liquidator to exhaust the estate's assets by paying approved claims in full to the insurer's creditors and preferred claimants in the order of the priority established by the General Assembly in R.C. 3903.42, but no provision in that act expressly authorizes payment of interest to any claimant.

_____

O'DONNELL, J.

{¶ 1}  The superintendent of insurance for the state of Ohio, Mary Jo Hudson, acting in the capacity as liquidator of the Oil & Gas Insurance Company ("OGICO"), appeals from a judgment of the Tenth District Court of Appeals that reversed a grant of summary judgment in favor of the superintendent on a declaratory judgment action and held that the superintendent had no authority to

pay interest to creditors and claimants of OGICO before paying the shareholders of OGICO.

{¶ 2}   The issue presented on this appeal is whether the liquidator may pay interest to the insurer's creditors and other preferred claimants on allowed claims before paying the funds remaining in the estate to the insurer's shareholders, in this case, Petrosurance, Inc.

{¶ 3}   The Insurers Supervision, Rehabilitation, and Liquidation Act ("Liquidation Act"), codified in R.C. Chapter 3903, establishes nine prioritized classes of claims that can be filed against an insurer's estate during liquidation and directs the liquidator to exhaust the estate's assets by paying approved claims in full to the insurer's creditors and preferred claimants in the order of the priority established by the General Assembly in R.C. 3903.42, but no provision in that act expressly authorizes payment of interest to any claimant.  Accordingly, we affirm the judgment of the court of appeals that the superintendent lacks authority to pay interest to OGICO's creditors and other claimants, and we remand the case to the trial court for further proceedings in accordance with our decision.

## Facts and Procedural History

{¶ 4}   The Oil & Gas Insurance Company operated as an Ohio property and casualty insurance company primarily insuring oil- and gas-related activities until August 1990, when the Franklin County Court of Common Pleas declared it insolvent and ordered the superintendent of insurance to liquidate the assets of the company, over the objection of its sole shareholder, Petrosurance, Inc. Subsequently, the court ordered all claims against the assets of OGICO to be submitted by December 31, 1997.

{¶ 5}   Pursuant to that court order, the superintendent of insurance collected and verified the submitted claims, and the trial court authorized payment to OGICO's policyholder claimants in 2004 and to OGICO's general creditors and state and local governments in 2006.  After making these expenditures, the

superintendent held a balance in the estate exceeding $13 million. Thereafter, in 2006, representatives of the superintendent provided a claim form to Petrosurance, suggesting that it assert its right to the remaining funds.

{¶ 6} However, on April 30, 2007, before Petrosurance returned its proof of claim form, the superintendent filed a declaratory judgment action against Petrosurance and Mark Hardy,[1] seeking a declaration that they had no right to any remaining funds because neither had an allowed claim against the estate. Petrosurance counterclaimed, asserting that it is entitled to the funds because it is OGICO's sole shareholder and the liquidation statute provides that after paying all claims and any remaining administrative expenses, any balance belongs to shareholders of the liquidated insurance company. The trial court dismissed Petrosurance's counterclaim, stating that a claimed right to the funds must be established in accordance with the Liquidation Act and that it lacked jurisdiction to hear the counterclaim because the act bars civil actions against an insurer or liquidator after the court enters its liquidation order.

{¶ 7} On October 16, 2007, Petrosurance submitted its proof of claim to the superintendent, asserting entitlement to the remaining funds as the sole shareholder of OGICO. On November 1, 2007, the superintendent advised Petrosurance that its proof of claim would not be filed, because the company submitted it after the December 31, 1997 filing deadline and because its claim was encompassed in a prior claim filed by Hardy in 1991 and no objection had been filed in response to the superintendent's denial of that claim.

---

1. {¶ a} In *Fabe v. Prompt Fin., Inc.* (1994), 69 Ohio St.3d 268, 269, 631 N.E.2d 614, this court described the relationship between Mark Hardy, Petrosurance, and OGICO as follows: "OGICO's parent company is Petrosurance Incorporated, a subsidiary of Forum Holdings U.S.A., Inc. Forum Holdings U.S.A., Inc. is a subsidiary of Forum Re Group, Inc., a.k.a. The Group, Inc. * * *

{¶ b} "* * * [Hardy] is a director of OGICO and a director of Petrosurance Incorporated. Hardy is also a director of Forum Holdings U.S.A., Inc., and the chief executive officer and a director of Forum Re Group, Inc. * * * [I]t is apparent from the record that all related corporate entities come under the ultimate control of Hardy."

{¶ 8} The superintendent then moved for summary judgment in the declaratory judgment action, arguing that Petrosurance had waived its right to the remaining funds by failing to submit a timely claim, and further arguing that Hardy had waived his right to the remaining funds by failing to object to the superintendent's denial of his prior claim. The superintendent sought a declaration that Petrosurance had no interest in the OGICO liquidation estate and also sought permission to distribute pro rata shares of the remaining funds to the creditors whose claims had been allowed as interest on those claims. Petrosurance also moved for summary judgment, contending that its proof of claim properly asserted entitlement to the funds as OGICO's sole shareholder.

{¶ 9} On November 13, 2007, the court granted the superintendent's motion for summary judgment with respect to Hardy, concluding that the superintendent had properly denied his 1991 claim because it had not been supported by any evidence and that Hardy lacked standing to complain of that denial because he failed to object in accordance with the procedure set forth in R.C. 3903.39.

{¶ 10} Subsequently, on August 5, 2008, the court granted summary judgment in favor of the superintendent, concluding that interest could be paid to the creditors and preferred claimants on the principal of their claims. However, it declined to decide whether Petrosurance had properly asserted its claim, because it concluded that, as a practical matter, no funds would remain sufficient to pay Petrosurance once the superintendent paid interest on the other claims.

{¶ 11} Petrosurance appealed to the Tenth District Court of Appeals, which reversed the trial court's entry of summary judgment in favor of the superintendent, concluding that "Petrosurance did not waive its right to file a claim for the surplus funds, that the absolute final bar date did not apply to Petrosurance's shareholder claim, and that the payment of interest to higher priority claimants is not permitted under R.C. 3903.42." *Hudson v. Petrosurance*,

Inc., 10th Dist. No. 08AP-1030, 2009-Ohio-4307, ¶ 45. The appellate court also stated that the superintendent had erroneously refused to file Petrosurance's proof of claim and had refused to request a hearing when Petrosurance objected to the superintendent's refusal to file its claim. Id. at ¶ 46. The appellate court observed that, based on the trial court's erroneous ruling that the superintendent could pay interest to creditors, the court had never determined whether Petrosurance was entitled to the surplus funds. The appellate court then remanded the matter for further proceedings.

{¶ 12} On appeal to this court, the superintendent presents one proposition of law: "When all creditors' claims against a liquidated insurance company have been paid in principal and a surplus remains, the liquidator must pay the creditors for interest that accrued during liquidation before paying any remainder to the company's shareholders."

{¶ 13} The superintendent contends that although R.C. Chapter 3903 neither explicitly allows nor prohibits the payment of interest to creditors, the absence of a specific provision for interest does not render the obligation to pay interest a nullity, since the purpose of the statute is to protect the insureds, claimants, creditors, and the public generally, and any ambiguity must be liberally construed in favor of these groups. The superintendent also asserts that the majority of other jurisdictions permit the payment of interest to creditors when sufficient funds exist and that allowing creditors to recover interest on their claims does not prejudice shareholder rights.

{¶ 14} In response, Petrosurance contends that the Liquidation Act does not authorize the superintendent to pay interest to any creditors or claimants in an insurance company liquidation proceeding. It asserts that if the General Assembly had intended creditors and claimants to recover interest, it would have expressly provided for the payment of interest in the statute, as it has done in

statutes regarding bank liquidations, which provide for creditors to receive interest on claims before payment of funds to shareholders. See R.C. 1125.24.

**{¶ 15}** Accordingly, we are asked to consider whether R.C. Chapter 3903 permits the liquidator of an insurance company to pay interest to the insurer's creditors and other preferred claimants on allowed claims before paying any remaining funds to the insurer's shareholders.

### R.C. Chapter 3903 — The Liquidation Act

**{¶ 16}** The Liquidation Act sets forth a comprehensive framework governing the liquidation of insurance companies operating in Ohio. The purpose of the act is to protect the interests of insureds, claimants, creditors, and the public generally, and the provisions of the act are to be liberally construed to effectuate this purpose. See R.C. 3903.02(C) and (D). When the superintendent of insurance believes that an insurer has become insolvent, R.C. 3903.17 authorizes the superintendent to file a complaint in the court of common pleas for an order of liquidation. Upon the court's issuance of such an order, the superintendent takes possession of the assets of the insurer and is empowered to review all claims filed in the liquidation by creditors and other preferred claimants, and to recommend the amounts to be paid on each claim. R.C. 3903.18(A) and 3903.43(A).

**{¶ 17}** R.C. 3903.35(A) specifies that "[p]roof of all claims shall be filed with the liquidator in the form required by section 3903.36 of the Revised Code on or before the last day for filing specified in the notice required under section 3903.22 of the Revised Code * * *." When the superintendent denies a claim in whole or in part, written notice must be given to the claimant or his attorney, and "[w]ithin sixty days from the mailing of the notice, the claimant may file objections with the [superintendent]." R.C. 3903.39(A). Further, if no such filing is made, the claimant may not further object to the determination. Id.

**{¶ 18}** R.C. 3903.42 establishes nine prioritized classes of claimants and provides that "[e]very claim in each class shall be paid in full or adequate funds

retained for such payment before the members of the next class may receive any payment." The priority of classes is as follows:

{¶ 19} "(A) Class 1. The costs and expenses of administration * * *.

{¶ 20} " * * *

{¶ 21} "(B) Class 2. All claims under policies for losses incurred, including third party claims, all claims of contracted providers against a medicaid health insuring corporation for covered health care services provided to medicaid recipients, all claims against the insurer for liability for bodily injury or for injury to or destruction of tangible property that are not under policies, and all claims of a guaranty association or foreign guaranty association. * * * Claims under nonassessable policies for unearned premium or other premium refunds.

{¶ 22} "(C) Class 3. Claims of the federal government.

{¶ 23} "(D) Class 4. Debts due to employees for services performed * * *. * * *

{¶ 24} "(E) Class 5. Claims of general creditors.

{¶ 25} "(F) Class 6. Claims of any state or local government. * * *

{¶ 26} "(G) Class 7. Claims filed late or any other claims other than claims under divisions (H) and (I) of this section.

{¶ 27} "(H) Class 8. Surplus or contribution notes, or similar obligations, and premium refunds on assessable policies. * * *

{¶ 28} "(I) Class 9. The claims of shareholders or other owners."

### Analysis

{¶ 29} This cause is now before our court upon acceptance of a discretionary appeal. Because this case was originally decided on summary judgment, our review is de novo, in accordance with the standard set forth in Civ.R. 56. See *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8, and *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 254, 553 N.E.2d 1038, reversed on other grounds by *Clark v. Southview Hosp. & Family*

*Health Ctr.* (1994), 68 Ohio St.3d 435, 628 N.E.2d 46.  As we stated in *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, "[i]n order to obtain summary judgment, the movant must show that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.  *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150, 152.  This court has complete and independent power of review as to all questions of law. *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777, 780; *Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.* (1994), 68 Ohio St.3d 559, 563, 629 N.E.2d 423, 426."

{¶ 30} Here, there are no questions of fact, and the only issue involves a question of law, which we consider on a de novo basis.  In construing the Liquidation Act to determine whether the superintendent is authorized to pay interest to OGICO's creditors and other preferred claimants before paying Petrosurance, our obligation is to ascertain and to give effect to the intent of the legislature as expressed in the statute.  *Dircksen v. Greene Cty. Bd. of Revision*, 109 Ohio St.3d 470, 2006-Ohio-2990, 849 N.E.2d 20, ¶ 16.  In *State ex rel. Russo v. McDonnell*, 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 37, we explained that "in order to determine this intent, we must ' "read words and phrases in context according to the rules of grammar and common usage." ' "  Id., quoting *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.*, 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68,  ¶ 27, quoting *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23; see also R.C. 1.42.  Moreover, as we recognized in *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 15, "a court may not add words to an unambiguous

statute, but must apply the statute as written." Id., citing *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52.

**{¶ 31}** The Liquidation Act is silent as to the payment of interest, but the General Assembly could have expressly provided for payment of interest on claims against an insurer's estate, if it had chosen to do so. We decline to add words to the statute or interpret the legislative silence as authorization to pay interest, as such a construction would materially affect the priority of payments to claimants as set forth in R.C. 3903.42. To interpret what is already plain "is not interpretation but legislation, which is not the function of the courts." *Iddings v. Jefferson Cty. School Dist. Bd. of Edn.* (1951), 155 Ohio St. 287, 290, 44 O.O. 294, 98 N.E.2d 827.

**{¶ 32}** In other statutory contexts, the legislature has indicated its intent to authorize payment of interest to claimants with plain, direct, and express language. For example, R.C. 1125.24, the statute establishing the priority of distribution of the assets of an insolvent bank, provides that *"[i]nterest shall be given the same priority as the claim on which it is based*, but no interest shall be paid on any claim until the principal of all claims within the same class has been paid or provided for in full." (Emphasis added.) In contrast, the legislative silence in R.C. 3903.42 cannot fairly be read to authorize payment of interest in insurer liquidations.

**{¶ 33}** Our role as a court is to apply statutes as written, and we conclude that the General Assembly did not intend to authorize the superintendent of insurance, acting as liquidator of an insurance company, to pay interest to creditors and other preferred claimants of an insolvent insurance company before paying remaining funds to company shareholders.

## Conclusion

**{¶ 34}** In accordance with R.C. 3903.42, which establishes a priority of classes for payment of claims against an insolvent insurance company but does

not authorize the payment of interest on any claim, we reject the superintendent's proposition of law that interest should be paid to creditors and other preferred claimants to make them whole before the owners of the company may recover from assets of the liquidation estate. Also, because the plain meaning of the statute directs payment of these remaining funds to shareholders, we decline to follow the practice in other jurisdictions of distributing assets remaining after principal claims have been paid to creditors.

{¶ 35} Accordingly, we affirm the judgment of the court of appeals, which reversed the grant of summary judgment to the superintendent and held that R.C. Chapter 3903 does not permit the payment of interest in an insurer liquidation and that the superintendent erroneously refused to file Petrosurance's proof of claim.

{¶ 36} It is undisputed in this record that Petrosurance is the sole shareholder of OGICO, that the superintendent has "considered all timely filed claims, and paid in full all claims that were determined proper and allowed by the Liquidator and the Court," and that the superintendent is in possession of approximately $13 million resulting from the liquidation of OGICO's assets. Moreover, R.C. 3903.42 establishes a priority for payment of claims from an insurer's estate, but does not authorize payment of interest.

{¶ 37} We also affirm the appellate court holdings regarding its rejection of the bases for the superintendent's refusal to file Petrosurance's 2007 proof of claim and its conclusion that Petrosurance did not waive its right to file that claim. In addition, we agree that the superintendent thwarted efforts of Petrosurance to collect these funds by erroneously refusing to file the proof of claim and then refusing to request a hearing on objections by Petrosurance to that refusal.

{¶ 38} We further recognize, as did the appellate court, that the trial court, based on its erroneous conclusion that the superintendent could pay interest to creditors before making any payment to Petrosurance, never considered

10

Petrosurance's entitlement to the remaining funds held by the superintendent. Accordingly, the matter is remanded to the trial court to permit Petrosurance an opportunity to submit its proof of claim and for the trial court to determine its entitlement to the remaining funds in accordance with R.C. Chapter 3903 and its disposition of this matter in accordance with our opinion.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., concurs separately.

_____

**BROWN, C.J., concurring.**

{¶ 39} I concur with the majority that no provision of the Insurers Supervision, Rehabilitation, and Liquidation Act ("Liquidation Act") expressly authorizes payment of interest to any claimant. In the absence of express authorizing statutory language, I am reluctantly constrained to conclude that the superintendent may not pay interest to the Oil & Gas Insurance Company's ("OGICO's") creditors and other preferred claimants before paying Petrosurance, an OGICO shareholder—an entity in the lowest priority class for receiving funds under R.C. 3903.42.

{¶ 40} The superintendent has presented an appealing policy argument that she should be permitted to pay Class 2 through Class 8 claimants interest on their claims when adequate funds remain after satisfaction of their original claims, before distributing any remaining funds to Class 9 claimants, i.e., shareholders of the defunct company. As summarized by the National Association of Insurance Commissioners in its amicus brief in support of the superintendent, "the Ohio Liquidation statutes are designed and should be implemented to protect the interests of injured claimants over the interests of shareholders and owners whose actions likely caused the insolvency." However, it is within the province of the

legislative branch, rather than the judicial branch, to determine public policy relative to the liquidation of insurance companies.

{¶ 41} The superintendent correctly observes that R.C. 3903.21(A) vests in her, as liquidator, expansive powers and that R.C. 3903.43 provides her with the authority to "compound, compromise, or in any other manner negotiate the amount for which claims will be recommended to the court." Moreover, R.C. 3903.02(D) explicitly identifies the purpose of the Liquidation Act as the "protection of the interests of insureds, claimants, creditors, and the public generally." It is tempting to accept the superintendent's argument that these general statutory provisions vest her with authority to revisit previously awarded claims and add interest to them when funds remain at the conclusion of payment of Class 8 claims. In my view the equities weigh in favor of such a result. However, R.C. 3903.42 expressly states with specificity the "order of distribution of claims" and does not include authorization for payment of interest on claims. And as observed by the majority, the inclusion in R.C. 1125.24 of language specifically authorizing the payment of interest on claims filed in bank liquidations demonstrates that the General Assembly is capable of authorizing interest payments in liquidation proceedings when it intends to do so. Yet no such express authorization exists in R.C. Chapter 3903.

{¶ 42} I therefore write separately to urge the members of the General Assembly to consider amending R.C. Chapter 3903 to expressly authorize the liquidator of an insurance company to pay interest on previously allowed claims, when surplus funds exist, prior to distributing funds to shareholders. The General Assembly has expressed the general purpose of the Liquidation Act as the protection of the interests of insureds, claimants, creditors, and the public generally. R.C. 3903.02(D). Amendment of the Liquidation Act to expressly authorize payment of interest on claims, when a surplus exists, would more fully

protect the interests of claimants and thereby more fully effectuate the stated goal of the act.

_____

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, Brandon J. Lester, Deputy Solicitor, and W. Scott Myers and Sean M. Culley, Assistant Attorneys General, for appellant.

Beckman Weil Shepardson, L.L.C., Peter L. Cassady, Laurie A. Lamb, and John (Hui) Li, for appellee.

Squire Sanders & Dempsey, L.L.P., and Aneca E. Lasley, urging reversal on behalf of amicus curiae, National Association of Insurance Commissioners.

_____