[Cite as *Nationstar Mtge., L.L.C. v. Dunigan*, 2014-Ohio-1378.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nationstar Mortgage, LLC, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 13AP-125 |
| v. | : | (C.P.C. No. 11CVE-02-1755) |
| Mary L. Dunigan, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 31, 2014

*Manley Deas Kochalski LLC, and Matthew J. Richardson*, **for appellee.**

*Doucet & Associates, Inc.*, *Troy J. Doucet* and *Audra L. Tidball*, **for appellant.**

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Mary L. Dunigan, appeals from a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, Nationstar Mortgage, LLC ("Nationstar"). For the following reasons, we affirm.

{¶ 2} On December 19, 2006, Dunigan executed a $314,000 note in favor of Lehman Brothers Bank, FSB. To secure the note, Dunigan mortgaged the property located at 870-872 North Pearl Street in Columbus.[1] Soon after the origination of the

---

[1] Defendants to the underlying action also include 870-872 N. Pearl St., LLC, to whom Dunigan transferred the property after mortgaging it, and the Franklin County Treasurer.

mortgage loan, Aurora Loan Servicers, LLC ("Aurora") became the holder of the note and mortgage.

{¶ 3} In January 2008, Dunigan did not submit her monthly mortgage loan payment. From that point onward, Dunigan had difficulty remaining current with her payment obligations. In 2008 and 2009, Aurora entered into repayment agreements with Dunigan to assist her in bringing her loan current.[2] However, Dunigan's deficiency persisted. In letters dated May 14 and July 6, 2010, Aurora notified Dunigan that her loan was in default and, if she did not bring her loan current within 30 days, Aurora could demand the entire balance owing on the loan.

{¶ 4} On August 19, 2010, Aurora and Dunigan entered into an agreement entitled "Foreclosure Alternative Agreement." The agreement stated that Dunigan's loan was in default and the total arrearage then existing amounted to $18,511.98. Additionally, the agreement stated that Aurora had accelerated the loan and declared the full amount of the loan due and payable.

{¶ 5} Although it could have filed for foreclosure, Aurora instead agreed to allow Dunigan to repay the $18,511.98 arrearage under the terms of the Foreclosure Alternative Agreement. Under those terms, Dunigan agreed to pay Aurora $4,294.25 per month from September 2010 to February 2011. Dunigan also agreed to timely submit to Aurora certain financial information and documentation to support Dunigan's request for a loan modification. In return, Aurora promised to "forbear from exercising any or all of its rights and remedies now existing or arising during the term of this Agreement under the [note and mortgage], provided" that Dunigan did not default on her obligations under the agreement. (R. 122 at Foreclosure Alternative Agreement, Section 3.)

{¶ 6} Dunigan complied with the terms of the Foreclosure Alternative Agreement. During the pendency of that agreement, Aurora assessed Dunigan's financial condition for a loan modification, but found that Dunigan's income was insufficient to support the loan, even on modified terms. Aurora therefore denied Dunigan's application to modify the loan.

---

[2] In 2009, the parties also entered into an oral forbearance agreement whereby Dunigan paid an increased monthly payment and, in return, Aurora did not file for foreclosure.

{¶ 7}   The Foreclosure Alternative Agreement expired on February 1, 2011.  At that point, Dunigan still owed the equivalent of three monthly payments due under the note. After Aurora applied Dunigan's payments to the amounts owed, including the $18,511.98 arrearage, payment remained outstanding for the amounts due under the note for December 2010, and January and February 2011.

{¶ 8}   On February 8, 2011, Aurora commenced a foreclosure action in the trial court.   Dunigan answered and filed a counterclaim.   In her counterclaim, Dunigan asserted a claim for breach of contract, alleging that Aurora breached the Foreclosure Alternative Agreement by filing for foreclosure.

{¶ 9}   Both Aurora and Dunigan moved for summary judgment.  Around the time Aurora filed its summary judgment motion, it transferred Dunigan's note and mortgage to Nationstar.   Upon Aurora's motion, the trial court substituted Nationstar as plaintiff. Soon thereafter, the trial court granted Nationstar summary judgment on its claims and Dunigan's counterclaim.   On February 4, 2013, the trial court entered a judgment and decree in foreclosure.

{¶ 10} Dunigan appealed the February 4, 2013 judgment.   During appellate mediation, Nationstar offered Dunigan a permanent loan modification.   Dunigan accepted, and the parties executed a modification agreement.  According to Dunigan, the modification agreement moots any challenge to the grant of summary judgment on Nationstar's claims. Dunigan, therefore, now proceeds only against the grant of summary judgment on her counterclaim and assigns the following error:

> THE TRIAL COURT ERRED IN GRANTING NATIONSTAR
> SUMMARY JUDGMENT ON MS. DUNIGAN'S BREACH OF
> CONTRACT COUNTERCLAIM.

{¶ 11} A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.  *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29.  Appellate review of a trial court's ruling on a motion for summary judgment is de novo.  *Hudson* at ¶ 29.  This means that an appellate

court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 12}   To prove a claim for breach of contract, Dunigan must demonstrate the existence of a contract, performance of that contract by her, breach of the contract by Aurora, and damage or loss to her. *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 2002-Ohio-443, ¶ 27 (10th Dist.).  The parties do not dispute the first two elements of Dunigan's claim.  They agree that the Foreclosure Alternative Agreement constitutes a contract, and that Dunigan performed her obligations under that contract.  The parties, however, disagree regarding whether Aurora breached the Foreclosure Alternative Agreement.

{¶ 13} Dunigan first claims that Aurora breached the Foreclosure Alternative Agreement by filing a foreclosure action against her.  We disagree.  In the Foreclosure Alternative Agreement, Aurora agreed to forbear from exercising its rights and remedies under the mortgage, which included foreclosure, "during the term of this Agreement."  (R. 122 at Foreclosure Alternative Agreement, Section 3.)   The Foreclosure Alternative Agreement expired on February 1, 2011.  Aurora did not file its foreclosure action until February 8, 2011.  As Aurora did not seek foreclosure "during the term" of the Foreclosure Alternative Agreement, its institution of the foreclosure action did not breach that agreement.

{¶ 14} Next, Dunigan argues that Aurora breached the Foreclosure Alternative Agreement by filing for foreclosure when she had repaid the $18,511.98 arrearage set forth in the agreement.  We find this argument unpersuasive as well.  Although Dunigan's payments under the Foreclosure Alternative Agreement may have repaid the $18,511.98 due and owing as of the date of the agreement, they did not bring the loan current and, thus, cure the default.  Dunigan's account remained deficient because the monthly payments she made under the Foreclosure Alternative Agreement were not large enough to repay the arrearage and cover the payments that came due each month under the note.  As of the last payment under the Foreclosure Alternative Agreement, Dunigan still owed the equivalent of three monthly payments, i.e., the payments due under the note for December 2010, and January and February 2011.

{¶ 15} The Foreclosure Alternative Agreement provides that "[n]othing contained herein shall constitute a waiver of any [or] all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings." (R. 122 at Foreclosure Alternative Agreement, Section 7.) Moreover, according to the agreement, "Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action." (R. 122 at Foreclosure Alternative Agreement, Section 8.) Thus, the Foreclosure Alternative Agreement explicitly preserved Aurora's right to proceed with a foreclosure action after the expiration of the agreement if Dunigan remained in default. As Dunigan was in default on February 8, 2011, Aurora acted within its contractual rights when it initiated its foreclosure action.

{¶ 16} Nationstar claims that, in the modification agreement executed during this appeal, Dunigan admitted that she had defaulted. Nationstar contends that this admission moots the dispute over whether Aurora had the contractual right to file for foreclosure. We do not agree with Nationstar that Dunigan made the alleged admission. Even if she did, the admission would only strengthen Nationstar's argument that Aurora had the right to foreclose, not moot the parties' dispute.

{¶ 17} Finally, Dunigan argues that Aurora breached the Foreclosure Alternative Agreement by not disclosing to her the amount she would have to pay to cure the default at the expiration of the agreement. Again, we are not persuaded. Nothing in the Foreclosure Alterative Agreement obligated Aurora to notify Dunigan of the amount remaining due. The record evidence demonstrates that Dunigan and Aurora were in communication during January and February 2011. We agree with Dunigan that Aurora should have told Dunigan during those conversations the amount Dunigan still owed, but we cannot find that Aurora's failure to do so is a breach of the Foreclosure Alternative Agreement.[3]

---

[3] We note that the record does not contain any evidence that Aurora refused to disclose the amount remaining due. To the contrary, Aurora's records indicate that, in a telephone conversation with an Aurora representative on January 24, 2011, Dunigan asked what would be due on her account after her February 2011 payment. The representative told her that she would owe for December 2010, and January and February 2011. When Dunigan asked why, the representative said that repayment plans do not always bring accounts current. Apparently, Dunigan did not ask the next logical question, i.e., what was the exact amount she would still owe?

{¶ 18} Having rejected each of Dunigan's arguments, we overrule Dunigan's sole assignment of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

CONNOR and T. BRYANT, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).

_____