[Cite as *Buffalo Wings & Rings, L.L.C. v. M3 Restaurant Group, L.L.C.*, 2015-Ohio-3843.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Buffalo Wings & Rings, LLC,                    :
c/o Slovin & Associates Co. LPA,

                                               :

        Plaintiff-Appellant,          :          No. 14AP-980
                                                          (C.P.C. No. 12CVO-13779)
                                               :

v.                                                        (ACCELERATED CALENDAR)

                                               :

M3 Restaurant Group, LLC
Assignee of 3M Restaurant Group,               :
LLC et al.,

                                               :

        Defendants-Appellees.

                                               :

---

### D E C I S I O N

Rendered on September 22, 2015

---

*Cors & Bassett, LLC*, and *Michael L. Gay*, for appellant.

*Bailey Cavalieri, LLC, Dan L. Cvetanovich*, and *Jolene S. Griffith*, for appellees.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, P.J.

{¶ 1} Buffalo Wings & Rings, LLC, plaintiff-appellant, appeals from the judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to M3 Restaurant Group, LLC ("M3"), Alex Mendoza, Marc Mendoza, and William McRaith, defendants-appellees.

{¶ 2} On March 6, 2008, M3 (which was named 3M Restaurant Group, LLC, at the time) entered into a Franchise Agreement ("agreement") for the operation of a restaurant. On the same day, the Mendozas and McRaith executed a guarantee and indemnification.

{¶ 3}   On March 23, 2011, appellees sent a letter to appellant outlining disputes they had with appellant and proposing to end the business relationship. Appellant did not reply. On April 15, 2011, appellees mailed appellant another letter in which they indicated they assumed appellant had no objection to the proposed termination of their relationship given its failure to reply to the first letter.

{¶ 4}   On November 1, 2012, appellant filed a complaint against appellees, alleging claims for breach of contract, breach of guaranty, quantum meruit, and money owed on an account. On March 26, 2013, appellees filed answers. On April 16, 2013, appellees filed counterclaims against appellant.

{¶ 5}   On January 16, 2014, appellant filed a motion for summary judgment and, on January 17, 2014, appellees filed a motion for partial summary judgment with each of the parties arguing, among other things, that the other party's claims were barred by the one-year limitations provided in section 19.9 of the agreement. Section 19.9 prohibits either party from bringing a claim more than one year after the party discovers the facts relevant to such claim, unless the claim falls within one of three exceptions specifically stated in the agreement. Although the parties agreed that none of the claims fell under the first two exceptions in sections 19.9(i) and (ii), appellant argued that its claims fell under the exception in section 19.9(iii).

{¶ 6}   On October 31, 2014, the trial court issued a judgment granting appellees' motion for summary judgment. The trial court found that appellant's claims were subject to the one-year limitations provided in section 19.9 of the agreement, instead of the usual 15-year statute of limitations for breach of contract, and none of the exceptions to the one-year limitations period in section 19.9 applied to the present case. The court specifically concluded that section 19.9(iii) clearly set forth an exception for claims for injunctive relief only, and, because appellant was seeking monetary damages, the exception did not apply. Appellant appeals the judgment of the trial court, asserting the following assignment of error:

> The trial court erred, to the prejudice of the Appellant, in granting summary judgment in favor of the Appellee.

{¶ 7}   In its sole assignment of error, appellant argues that the trial court erred when it granted summary judgment. Summary judgment is appropriate when the moving

party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 8} When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 9} The present appeal concerns the language contained in section 19.9 of the agreement which provides a one-year limitation for any and all claims arising out of the agreement or relationship between the parties, subject to three categories of exceptions. Specifically, section 19.9 provides:

> 19.9 <u>Limitation of Claims</u>. Except for:
>
> (i) claims against Franchisee concerning the underreporting of Net Sales and corresponding underpayment of Royalty and Advertising Fees,

(ii) claims against Franchisee by Franchisor relating to third party claims or suits brought against Franchisor as a result [of] Franchisee's operation of the Franchised Restaurant, and

(iii) claims for injunctive relief to enforce the provisions of this Agreement relating to Franchisee's use of the Marks, Franchisee's obligations upon the termination or expiration of this Agreement, Franchisee's obligations under Articles 15 or 18 of this Agreement, or an assignment of this Agreement or any ownership interest therein,

any and all claims arising out of or relating to this Agreement or the relationship between the parties will be barred unless an action is commenced within one year from the date Franchisee or Franchisor knew or should have known of the facts giving rise to such claims.

{¶ 10} The parties agree that the exceptions in sections 19.9(i) and (ii) do not apply here. However, they disagree as to the meaning of the third exception contained in section 19.9(iii). Appellees interpret section 19.9(iii) as exempting from the one-year limitations period claims for injunctive relief relating to the four subjects that follow. In other words, as the trial court put it, appellees believe the phrase "claims for injunctive relief to enforce the provisions of this Agreement relating to" modifies the four items that follow.

{¶ 11} To the contrary, appellant interprets section 19.9(iii) as exempting from the one-year limitations period "claims for" (1) "injunctive relief to enforce the provisions of this Agreement relating to Franchisee's use of the Marks"; (2) "Franchisee's obligations upon the termination or expiration of this Agreement"; (3) "Franchisee's obligations under Articles 15 or 18 of this Agreement"; or (4) "an assignment of this Agreement or any ownership interest therein." In other words, as the trial court put it, appellant believes that the phrase "claims for" modifies the enumerated list, and "injunctive relief" pertains only to claims relating to the use of appellant's mark.

{¶ 12} The trial court did not explicitly explain its rationale in its decision as to why it found the provision unambiguously exempts certain claims for injunctive relief from the one-year limitations period but, instead, cited agreement with the arguments set forth in pages six through nine in appellees' memorandum in opposition, which are the same as the arguments appellees advance on appeal. Appellees argued in their memorandum in opposition that section 19.9(iii) applies to four different types of claims for injunctive

relief. Appellees asserted that section 19.9(iii) allows for appellant to pursue injunctive relief to stop a terminated franchisee from portraying itself as a franchisee, in reference to the steps in section 19.4 that a franchisee must take after termination of the agreement to ensure that the terminated franchisee is not mistaken for a franchise. Appellees also contended that if appellant's interpretation were correct, the second, third, and fourth exceptions in section 19.9(iii) would more properly have been placed in section 19.9(i) or (ii), which are the exceptions that relate to "claims against franchisee" as compared to section 19.9(iii), which deals with "claims for injunctive relief to enforce." Based upon the foregoing, appellees argued that the only logical reading is that the opening portion of section 19.9(iii) referring to "claims for injunctive relief to enforce" applies to all four of the exceptions that follow in that subsection. Therefore, because appellant was on notice of the facts giving rise to appellees' claim as of appellees' April 15, 2011 letter, appellant's November 1, 2012 complaint, which did not include any claim for injunctive relief, was filed beyond the one-year limitation provided in section 19.9.

{¶ 13} In construing the terms of a written contract, our primary objective is to give effect to the intent of the parties, which is presumed to rest in the language they have chosen to employ. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992), citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. When contract terms are clear and unambiguous, courts will not create a new contract by finding an intent which is not expressed in the clear language utilized by parties. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus. "Whether a contract's terms are clear or ambiguous is a question of law for the court." *KeyBank Natl. Assn. v. Southwest Greens of Ohio, L.L.C.*, 10th Dist. No. 11AP-920, 2013-Ohio-1243, ¶ 27, citing *Nationwide Life Ins. Co. v. Canton*, 10th Dist. No. 09AP-939, 2010-Ohio-4088, ¶ 20. Moreover, the construction of a written contract is a question of law, which we review de novo. *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, ¶ 29.

{¶ 14} A contract is ambiguous where it cannot be given a "definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, ¶ 16.

However, as the Supreme Court of Ohio has cautioned, "[o]nly when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11. "When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether an ambiguity exists." *KeyBank* at ¶ 27, citing *BCI v. DeRycke*, 9th Dist. No. 21459, 2003-Ohio-6321, ¶ 16.

{¶ 15} In its appeal, appellant argues that section 19.9(iii) provides a list of four separate exceptions, each separated by a comma, with the use of the disjunctive "or" for the final category of exceptions. Appellant contends that the trial court's interpretation leads to an illogical result, in that an action for monetary damages due to a breach of contract would not involve injunctive relief under any circumstances. Although injunctive relief would be used to enforce provisions of an agreement involving trademark and intellectual rights, appellant asserts, injunctive relief would never be a viable tool for a party in a case involving monetary damages.

{¶ 16} After reviewing the agreement, we agree with the trial court's reading of section 19.9(iii) and find it unambiguous. From a grammatical perspective, appellant's reading of the provision is unsound. Although both parties' readings involve a list of items with parallel structure, appellant's reading would result in awkward phrasing, at best, and non-sensical phrasing, at worst. Under appellant's reading, section 19.9(iii) would prohibit the parties from initiating actions unless under one of the following circumstances: (1) "Except for * * * claims for injunctive relief to enforce the provisions of this Agreement relating to Franchisee's use of the Marks"; (2) "Except for * * * claims for * * * Franchisee's obligations upon the termination or expiration of this Agreement"; (3) "Except for * * * claims for * * * Franchisee's obligations under Article 15 or 18 of this Agreement"; and (4) "Except for * * * claims for * * * an assignment of this Agreement or any ownership interest therein." Only the first phrase is grammatically sound. A party may make a claim "for" injunctive relief. However, the second, third, and fourth phrases are awkward in that the object does not properly match "for." In a legal action, one does not make a claim "for" a franchisee's obligations or "for" an assignment of an agreement.

Instead, one would make a claim "relating to," "involving," or "regarding" a franchisee's obligations or "relating to," "involving," or "regarding" an assignment of an agreement.

{¶ 17} To the contrary, appellees' reading, which also involves a list of items with parallel structure, is grammatically sound. Under appellees' reading, section 19.9(iii) would prohibit the parties from initiating actions unless under one of the following circumstances: (1) "Except for * * * claims for injunctive relief to enforce the provisions of this Agreement relating to Franchisee's use of the Marks"; (2) "Except for * * * claims for injunctive relief to enforce the provisions of this Agreement relating to * * * Franchisee's obligations upon the termination or expiration of this Agreement"; (3) "Except for * * * claims for injunctive relief to enforce the provisions of this Agreement relating to * * * Franchisee's obligations under Articles 15 or 18 of this Agreement"; or (4) "Except for * * * claims for injunctive relief to enforce the provisions of this Agreement relating to * * * an assignment of this Agreement or any ownership interest therein." Grammatically, these phrases all make sense in structure and meaning.

{¶ 18} Words used in a written contract are to be interpreted according to their common, ordinary, and usual meaning. *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189 (1965). Contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced constructions. *Slingluff v. Weaver*, 66 Ohio St. 621, 627 (1902). The court must also read words and phrases in context and apply the rules of grammar and common usage. *Keller v. Foster Wheel Energy Corp.*, 163 Ohio App.3d 325, 2005-Ohio-4821 (10th Dist.).

{¶ 19} In the present case, appellees' view of section 19.9(iii) reflects the most natural reading of the provision. To follow appellant's reading would result in a strained construction that violates the rules of grammar and common usage. Thus, we find appellant's argument, in this respect, unpersuasive.

{¶ 20} Appellant also makes a curious argument in its appellate brief that we cannot reconcile with the record. In its brief, appellant allegedly quotes from the trial court's decision that because appellant " 'is seeking monetary damages, and not injunctive relief for monetary damages, the exception does not apply.' " Appellant then argues this holding "leads to an illogical result from a legal perspective" because "[a]n action for monetary damages due to breach of a contract would not involve injunctive relief under

any circumstances, and the court simply was wrong in holding that a breach of contract alleging monetary damages involves a claim for injunctive relief." (Appellant's Brief, 6-7.) Appellant contends that "injunctive relief cannot be granted in a claim involving only monetary damages," and "[i]t simply makes no sense for the court to hold that a claim for monetary damages as a result of the franchisee's breach of a contract is a claim subject to injunctive relief."  (Appellant's Brief, 7-8.)

{¶ 21} However, the trial court did not make the statement that appellant attributes to the court in its brief. In its decision, the trial court actually stated, "As Plaintiff is seeking monetary damages, the exception does not apply." (Decision, 6.)  The trial court did not include in this sentence the phrase, "and not injunctive relief for monetary damages," as appellant quotes in its brief. Although in its brief appellant cites the correct App.R. 10(B) record number for the trial court's judgment and the correct page number from the decision, this court cannot find the source of the phrase appellant attributes to the trial court anywhere in the record. As appellant's argument is based upon this missing phrase, we must find the argument without merit. As for the trial court's actual holding, the trial court was merely concluding that, because it found that the exceptions in section 19.9(iii) all pertain to claims for injunctive relief, and appellant's complaint sought only monetary damages, the exceptions in section 19.9(iii) did not apply. For the reasons cited above, we find the trial court did not err in its finding. Therefore, appellant's assignment of error is overruled.

{¶ 22} Accordingly, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and HORTON, JJ., concur.

_____