[Cite as *Dragonfly Academy v. Ohio Dept. of Edn.*, 2017-Ohio-7897.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dragonfly Academy, | : | |
| Plaintiff-Appellant, | : | No. 16AP-552 |
| | | (C.P.C. No. 15CV-4244) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Ohio Department of Education, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 28, 2017

**On brief**: *Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA*, and *Nelson E. Genshaft*, for appellant. **Argued:** *Nelson E. Genshaft.*

**On brief:** *Michael DeWine*, Attorney General, *Jeffrey A. Knight*, and *Marissa J. Palumbo*, for appellee. **Argued:** *Marissa J. Palumbo.*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Dragonfly Academy ("Dragonfly"), plaintiff-appellant, appeals from the judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for summary judgment filed by the Ohio Department of Education ("ODE"), defendant-appellee.

{¶ 2} ODE administers the Autism Scholarship Program ("the program"), pursuant to R.C. 3310.41. The program provides scholarships to parents of autistic children. The parents may enter into a contract with a special education program other than the one operated by the child's school district, another public entity, or a registered

private provider, and allocate their scholarship monies to the provider. Dragonfly was a registered private provider under the program until December 15, 2014, and received payments from ODE for providing education to autistic children under the program.

{¶ 3} We will initially set forth only the general facts and expound on the more specific details during our analysis of Dragonfly's assignment of error. The present matter involves Dragonfly's claim that it was entitled to payments from ODE for services rendered to two students, M.S. and D.B., for two school years, 2011-2012 and 2014-2015. The services for which Dragonfly seeks reimbursement are occupational therapy ("OT") and speech and language therapy ("SLT").

{¶ 4} On May 18, 2015, Dragonfly filed a complaint for collection of a past due account against ODE, claiming ODE had failed to compensate Dragonfly for providing education to M.S. and D.B. during the 2011-2012 and 2014-2015 school years. On April 25, 2016, ODE filed a motion for summary judgment. In general, ODE claimed that Dragonfly failed to submit sufficient evidence to demonstrate it had provided compensable services to M.S. and D.B. for the relevant school years. In response, Dragonfly submitted evidentiary material that it claimed supported its entitlement to payment.

{¶ 5} On June 30, 2016, the trial court granted ODE's motion for summary judgment. The trial court found that with regard to school years 2011-2012 and 2014-2015, Dragonfly failed to present evidence of the specific services provided to M.S. and D.B. that would entitle it to payment, determining that Dragonfly failed to provide any documentation and/or provided poor documentation. Dragonfly appeals the judgment of the trial court, asserting the following assignment of error:

> The Trial Court was in error when it granted summary judgment in a case where plaintiff demonstrated that it rendered services for which payment should be made. At a minimum, plaintiff in the case below demonstrated that it rendered services, and the supporting evidence it provided to the Trial Court was a basis on which a jury could find genuine issues of material fact subject to dispute.

{¶ 6} In its sole assignment of error, Dragonfly argues the trial court erred when it granted summary judgment to ODE. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving

party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 7} When seeking summary judgment on the grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 8} "To establish a prima facie case for money owed on an account, a plaintiff must demonstrate the existence of an account, including that the account is in the name of the party charged, and it must also establish (1) a beginning balance of zero, or a sum that can qualify as an account stated, or some other provable sum; (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) summarization by means of a running or developing balance, or an arrangement of beginning balance and items that permits the calculation of the amount claimed to be due." *Carasalina, LLC v. Smith Phillips & Assocs.*, 10th Dist. No. 13AP-

1027, 2014-Ohio-2423, ¶ 20 quoting *Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, ¶ 6 (1st Dist.).

{¶ 9} Here, Dragonfly first addresses the school year 2011-2012 and contends the trial court erred when it ignored evidence that substantiates Dragonfly's claims for payment from ODE. Much of Dragonfly's argument and the trial court's decision rely on an affidavit and five attached exhibits submitted by Miranda Abrams, the executive director of Dragonfly at the time of its closure in December 2014. The exhibits, along with what Abrams averred each demonstrated, are as follows: (1) exhibit A-1, an OT consultation form from Deandra L. Demes of Kids' Choice, LLC, dated December 6, 2011, showing OT services were provided at Dragonfly, including an assessment of M.S., (2) exhibit A-2, a letter from Demes listing the dates on which she provided OT services at Dragonfly during the 2011-2012 school year, (3) exhibit A-3, a June 5, 2012 letter from Demes to Lisa Huckins of ODE, in which Demes expresses non-specific disagreement with an article in a local newspaper that indicates Dragonfly's students were not receiving OT services by a licensed therapist, (4) exhibit A-4, notes from SLT therapist Kathy Deering from various times during the 2011-2012 school year, showing that direct SLT services were provided to M.S. and D.B.; and (5) exhibit A-5, notes from Deering regarding speech therapy provided to M.S. and D.B. Abrams also averred in her affidavit that, even if some of the services were consultative, that does not mean Dragonfly cannot be compensated for them, and she was not aware of any provision in the program that precludes such. She also averred that OT and SLT services were only a minor portion of the entire invoice for education services to these two students for the year, and Dragonfly provided other services.

{¶ 10} In granting summary judgment, the trial court found, in pertinent part, that Dragonfly failed to present evidence of the specific services provided to M.S. and D.B. in 2011-2012, and the OT and SLT services allegedly provided are poorly, if at all, documented. The court found the only evidence before the court establishing the alleged services were exhibits A-1, A-4, and A-5, attached to Abrams's affidavit. The court found exhibit A-1 minimally referenced alleged OT services provided to M.S. but did not include a date for those services; exhibit A-4 referenced SLT services provided to both M.S. and D.B., but the services only accounted for the end of the school year in May 2012 and

included OT services for 2010; and exhibit A-5 was almost entirely devoid of dates and the content was practically illegible. The court also found that Dragonfly failed to provide sufficient evidence of any additional services to M.S. and D.B. beyond OT and SLT to establish a payable account.

{¶ 11} In its brief, Dragonfly asserts it submitted reports from specialists in OT and SLT services showing direct services were provided to both M.S. and D.B. during 2011-2012. Dragonfly points to the reports from Demes, which show OT services were provided to M.S. and D.B. during 2011-2012, and the notes from Deering, which demonstrated that SLT services were provided directly to M.S. and D.B. during 2011-2012. Dragonfly also cites to the affidavit of Abrams, in which she avers compensable services were rendered to M.S. and D.B. Dragonfly admits that the evidence lacked specificity but asserts that such deficiencies do not warrant a finding for summary judgment. Dragonfly further argues there is nothing in R.C. 3310.41(B) and Ohio Adm.Code 3301-103-07(A) that mandate only direct services, as opposed to consultative services, are eligible for compensation under the program, and the requirement that only direct services are compensable is only a policy adopted by ODE. Dragonfly also argues it demonstrated that OT and SLT services were only a small portion of the range of services provided to the two students, yet ODE took the position that it would not pay for any of the services provided for the students for the entire year.

{¶ 12} We have reviewed the evidence relied on by Dragonfly and agree, in great part, with the trial court that it is insufficient to demonstrate a genuine issue of material fact that Dragonfly was entitled to payment for the alleged services in question. However, as noted below, we do find Dragonfly presented evidence to raise a genuine issue of material fact in one respect. We will address each of Dragonfly's arguments in turn. With regard to the report from Demes, exhibit A-1, initially, it should be noted that the "OT Consultation" form is dated December 6, 2011; thus, nearly one-half of the school year had already elapsed. Importantly, the report does not demonstrate that any direct services were provided. Furthermore, the report does not even reference D.B. The report merely indicates observations of M.S. and plans/suggestions for services for M.S. Therefore, this evidence was insufficient.

{¶ 13} With regard to exhibit A-2, this exhibit is a short, typed, undated memorandum from Demes that simply indicates a list of six dates of "service" for OT during the 2011-2012 school year, starting December 6, 2011. The memorandum does not give any indication to which students Demes provided the services or what services she provided. Therefore, this evidence was insufficient.

{¶ 14} With regard to Deering's notes, exhibit A-4, we initially note that, according to other evidence submitted, Deering did not begin providing SLT services until March 21, 2012, the final quarter of the school year. Nevertheless, this exhibit outlines services to numerous students and indicates that the services were direct unless otherwise noted. The exhibit specifically delineates the recipient of service, date of service, and duration of service, and includes direct services for M.S. and D.B. The exhibit also indicates whether the service was individual or group. Although we agree that this exhibit also contains a lot of material irrelevant to SLT services, and contains no evidence of SLT services performed prior to the dates detailed in Deering's notes, we find exhibit A-4 contains sufficient detail to at least raise a genuine issue of material fact as to whether compensable SLT services were provided by Deering on the dates she noted. Therefore, we find the trial court erred when it granted summary judgment in this respect.

{¶ 15} With regard to Dragonfly's argument that there is nothing in R.C. 3310.41(B) and Ohio Adm.Code 3301-103 that mandate only direct services, as opposed to consultative services, are eligible for compensation under the program, and the requirement that only direct services are compensable is only a policy adopted by ODE, we find this without merit. R.C. 3310.41(B) provides, in pertinent part, that tuition under the program is to be paid for the implementation of the child's individualized education program ("IEP"), and "[t]he services provided under the scholarship shall include an educational component or services designed to assist the child to benefit from the child's education." Ohio Adm.Code 3301-103-02(B) provides that the purpose of the scholarship is to allow the child to receive the services prescribed in the child's IEP. Similarly, Ohio Adm.Code 3301-103-07(B) provides that the scholarship monies "shall" be "used only as payment for the child * * * to receive special education and related services that implement the child's current IEP."

{¶ 16} Thus, our reading of the statute and rules is consistent with the interpretation by ODE; that is, the scholarship monies can be used only to pay for direct educational services to implement the IEP and not evaluations or consultations. Although R.C. 3310.41(B) does indicate that monies can be spent on "other services" agreed to by the provider and parent associated with educating the child, there is no evidence here of any agreement to other services. Dragonfly presents nothing to support its contrary interpretation of the statute and rules, and it is inapposite to the language in those provisions. Therefore, this argument is without merit.

{¶ 17} Dragonfly also argues it demonstrated that OT and SLT services were only a small portion of the range of services provided to the two students, yet ODE took the position that it would not pay for any of the services provided for the students for the entire year. However, as the trial court found, Dragonfly failed to submit any evidence of such, and Abrams's unsupported averments are insufficient to raise a genuine issue of material fact. Therefore, this argument is without merit.

{¶ 18} Dragonfly next addresses the school year 2014-2015 and contends the trial court erred when it failed to find genuine issues of material fact that require the weighing of evidence and assessing of credibility. Dragonfly first complains that ODE acted arbitrarily by refusing to pay any of the scholarship funds because Dragonfly submitted its December 17, 2014 invoice for services performed October to December 2014 in paper form rather than electronically, despite Dragonfly's explanation that it was forced to file its claims by paper for the 2014-2015 school year because it was locked out of the electronic filing system, as explained by Abrams in her affidavit. Dragonfly also argues that ODE wrongly withheld payment based on its claim it invoiced ODE for intervention specialist Brittany Berkey's services in October and November 2014, despite the fact that she ceased employment on October 2, 2014. Dragonfly claims it presented evidence demonstrating Berkey was actually employed until November 11, 2014. Dragonfly points to Abrams's affidavit, to which she attached a screen shot of Berkey's personal information form showing her end date of November 11, 2014.

{¶ 19} In response, ODE argues that, regardless of Berkey's employment status, the invoice failed to indicate what services were allegedly provided or by whom they were provided, which precluded ODE from verifying what services were provided or whether

they were provided in accordance with the program. ODE challenged Abrams's deposition and affidavit testimony in which Abrams offered the names of several individuals who may have provided the services reflected in the December 17, 2014 invoice.  ODE points out that Abrams's testimony and averments are not corroborated by any outside evidence, and that Abrams's claim that Berkey could have provided the services could not be accurate, given Berkey's indication that she ended her employment on October 2, 2014. With regard to the paper invoice, ODE claims that, regardless of Dragonfly's unsupported claim, it was locked out of the online filing system and the paper invoice was deficient as it failed to indicate what services were provided and the names of the providers.

{¶ 20} On these issues, the trial court found: (1) ODE presented evidence that Dragonfly submitted invoices for October, November, and December 2014 for services provided by Berkey, but Berkey did not work for Dragonfly after October 2, 2014, and (2) Berkey's invoice contains no description of the services provided and is devoid of substance.

{¶ 21} We agree with the trial court that the December 17, 2014 invoice was inadequate to demonstrate Dragonfly was entitled to payment from ODE. The invoice contains neither a description of which providers provided the services nor a description of the services. Although Abrams acknowledged in her deposition that the online filing system required the service provided and the name of the service provider be included, she had no compelling reason as to why she failed to submit this information with the paper invoice. We also agree with ODE that Abrams's testimony regarding the possible provider names does not rescue the invoice from inadequacy. Abrams testified in her deposition that she "believed" the invoice was for education and intervention services and she gave the names of three possible providers that she thought could have been included in the invoiced services, one of which was Berkey. Her uncertain testimony, when coupled with no other evidence, was insufficient. In addition, even if Berkey worked until November 11, 2014, there were numerous October and November 2014 services included in the invoice, and it is not clear whether those were for Berkey's services or some other provider. In sum, the December 17, 2014 invoice was inadequate to prove ODE owed Dragonfly for payments under the program. For these reasons, Dragonfly's assignment of error is overruled in part and sustained in part.

{¶ 22} Accordingly, Dragonfly's single assignment of error is overruled in part and sustained in part, and the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. The matter is remanded to that court to determine whether Deering provided compensable SLT services on the dates noted in exhibit A-4.

*Judgment affirmed in part and reversed in part;
cause remanded.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____