[Cite as *Wright v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-4359.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Willie J. Wright, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 14AP-153 |
| v. | : | (Ct. of Cl. No. 2012-06301) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

_____

D E C I S I O N

Rendered on September 30, 2014

_____

*Swope and Swope*, and *Richard F. Swope*, for appellant.

*Michael DeWine*, Attorney General, *Lindsey M. Grant* and *Christopher L. Bagi*, for appellee.

_____

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Plaintiff-appellant, Willie J. Wright, appeals a judgment of the Court of Claims of Ohio that granted summary judgment to defendant-appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we reverse and remand.

{¶ 2} Wright is an inmate in ODRC's care and custody. ODRC has assigned Wright to the North Central Correctional Complex ("NCCC"), which is a prison managed by Management Training Corporation ("MTC").

{¶ 3} On August 12, 2012, Wright filed a negligence action against ODRC. According to Wright's complaint, on or about March 9, 2012, NCCC correctional officers

transported him via a prison van from OSU Medical Center to NCCC. As Wright attempted to exit the van, he fell and injured himself. Wright attributed his fall to the correctional officers' negligent failure to: (1) transport him in a wheelchair, (2) remove his shackles before he left the van, and/or (3) assist him in exiting the van.

{¶ 4} ODRC moved for summary judgment on the basis that Wright had sued the wrong party in the wrong court. ODRC presented evidence that MTC, a private corporation, manages the day-to-day operation of NCCC pursuant to a contract between ODRC and MTC. According to ODRC, MTC is an independent contractor and, consequently, ODRC cannot be liable for MTC's negligence or the negligence of its employees. In response, Wright argued that MTC is not an independent contractor, but instead, an agent of ODRC. Wright therefore contended that ODRC was vicariously liable for the negligent acts of MTC and its employees.

{¶ 5} In a judgment entered January 22, 2014, the trial court concluded that Wright pleaded no claim for which ODRC was either vicariously or directly liable. The trial court determined that the evidence demonstrated MTC's status as an independent contractor, and no exception to the general rule exempting an employer from liability for its independent contractor's negligence applied. Accordingly, the trial court granted ODRC summary judgment.

{¶ 6} Wright now appeals the January 22, 2014 judgment, and he assigns the following error:

> THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 7} A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's

determination.  *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 8}  " 'One who causes work to be done is not liable, ordinarily, for injuries that result from carelessness in its performance by the employees of an independent contractor, to whom he has let the work, without reserving to himself any control over the execution of it.' "  *Richman Bros. Co. v. Miller*, 131 Ohio St. 424, 430-31 (1936), quoting *Ohio S. RR. Co. v. Morey*, 47 Ohio St. 207 (1890), paragraph three of the syllabus.  More simply, an employer is generally not liable for the negligent acts of an independent contractor that it has hired.  *Pusey v. Bator*, 94 Ohio St.3d 275, 278 (2002).  However, an employer cannot likewise evade liability if the negligent party is the employer's employee or agent.  Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of its employees or agents.  *Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 20; *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 18.

{¶ 9}  The doctrine of respondeat superior depends on the existence of control by a principal over an agent.  *Wuerth* at ¶ 20; *Councell v. Douglas*, 163 Ohio St. 292, 296 (1955).  If an employer retains control or the right to control the mode and manner of doing the work contracted for, then the relationship is one of principal and agent.  *Councell* at paragraph one of the syllabus.  On the other hand, if the employer merely dictates the ultimate result to be accomplished, then the relationship is one of employer and independent contractor.  *Id.*

{¶ 10} In determining whether an employer has the degree of control necessary to establish agency, courts examine a variety of factors, including: whether the employer or individual controls the details of the work; whether the individual is performing in the course of the employer's business rather than in an ancillary capacity; whether the individual receives compensation from the employer, and the method of that compensation; whether the employer or individual controls the hours worked; whether the employer or individual supplies the tools and place of work; whether the individual offers his services to the public at large or to one employer at a time; the length of employment; whether the employer has the right to terminate the individual at will; and

whether the employer and individual believe that they have created an employment relationship. *State ex rel. Nese v. State Teachers Retirement Bd.*, 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 35; *Hanson v. Kynast*, 24 Ohio St.3d 171, 175 (1986), fn. 5; Restatement of the Law 3d, Agency, Section 7.07, Comment f (2006).

{¶ 11} Given the amount of factors involved, determining whether a relationship is that of principal and agent or employer and independent contractor requires an intensive factual inquiry. If the opposing parties present evidence on both sides of the issue, then summary judgment is inappropriate, and a finder of fact must decide the issue. *Bostic v. Connor*, 37 Ohio St.3d 144, 146-47 (1988).

{¶ 12} Here, to show ODRC's control over MTC, Wright relies on the terms of ODRC and MTC's contract. In the contract, MTC agreed to implement and comply with Ohio laws and administrative rules, as well as ODRC policies and standard operating procedures. More specifically, MTC agreed to: hire personnel with the minimum qualifications established by ODRC; require its employees to obtain training through ODRC; meet ODRC's mandatory minimum staffing requirements; adopt policies, procedures, and practices for the security and control of the institution that comply with the requirements of R.C. 9.06; conduct specified in-processing activities when inmates arrive at NCCC; use the discipline procedures set forth in specified administrative rules and ODRC policies; implement use-of-force policies and procedures set forth in specified administrative rules and ODRC policies; and adopt an inmate grievance process that complies with specified administrative rules and ODRC policies. Additionally, the contract contains terms governing how MTC will provide for inmate visitation; food service; inmate education; the prison library; medical, dental, and mental health services; alcohol and drug treatment services; inmate drug testing; religious services; recreational programs; inmate work program assignments; the comissionary; inmates' clothing, mail, and property; and the maintenance and housekeeping of the institution.

{¶ 13} With regard to inmate transportation, the task that MTC's employees were performing when the alleged negligence occurred, the contract specifies the qualifications the driver of the vehicle must have, the type of restraints that must be used on the inmates during transportation, and pre-boarding procedures that correctional officers must

perform. The contract also forbids any unauthorized stops and restricts vehicles from varying from the designated routes.

{¶ 14} To counter this evidence, ODRC points to the affidavit testimony of Chris Shortland, the human resources manager for NCCC, and Kelly Sanders, the chief of ODRC's division of business administration. Both Shortland and Sanders state that, "[w]hile MTC maintains, manages, and operates NCCC in accordance with contractual and statutory criteria, it does so independently of [O]DRC and the State of Ohio." (Shortland affidavit at ¶ 10; Sanders affidavit at ¶ 9.) Sanders additionally avers that "[O]DRC is not involved in MTC's daily decision-making with regard to NCCC." (Sanders affidavit at ¶ 10.)

{¶ 15} The evidence presented by both parties has relevance to only one factor of the applicable test: who controls the details of the work that ODRC hired MTC to perform. Considering this sole factor, the trial court found that MTC was an independent contractor because the evidence did not show that ODRC controlled the specific mode and manner in which NCCC correctional officers were to remove inmates from prison vehicles. This finding is problematic for three reasons. First, the factor at issue requires a broader inquiry into who controls the details of the hireling's work, and not just who controls how to perform the specific task that was allegedly negligently performed. Second, the terms of ODRC and MTC's contract detail how MTC must perform a multitude of tasks that constitute the work contracted for, i.e., the operation of NCCC. That evidence contravenes ODRC's evidence, creating a material issue of genuine fact on which reasonable minds could disagree. Third, the trial court did not consider the numerous other factors that determine whether an individual is an agent or independent contractor.

{¶ 16} The outcome of this case depends in large part on the answer to the agency question. If MTC is ODRC's agent, then, by virtue of the doctrine of respondeat superior, Wright may sue ODRC for the alleged negligence of MTC's employees. If MTC is instead an independent contractor, then the doctrine of respondeat superior does not apply. As MTC's status presents a factual question on which reasonable minds could differ, the trial court erred in granting ODRC summary judgment. Accordingly, we sustain Wright's sole assignment of error.

{¶ 17} As a final matter, we note that no doubt exists regarding who ultimately will be responsible for the payment of any damages awarded in this case. In ODRC and MTC's contract, MTC agreed to indemnify ODRC. Thus, the determination of whether MTC is an agent or an independent contractor will only resolve whether Wright may sue ODRC. *See Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, at ¶ 22 ("[A] party injured by an agent may sue the principal, the agent, or both."). Regardless of who Wright sues, MTC will end up paying for any damages awarded.

{¶ 18} For the foregoing reasons, we sustain Wright's assignment of error, we reverse the judgment of the Court of Claims of Ohio, and we remand this cause to that court for further proceedings consistent with law and this decision.

*Judgment reversed; cause remanded.*

BROWN and DORRIAN, JJ., concur.

———————————