[Cite as *Dent v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-5557.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

HAROLD DENT

       Plaintiff

       v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

       Defendant

Case No. 2013-00554

Magistrate Robert Van Schoyck

DECISION OF THE MAGISTRATE

{¶1} Plaintiff, an inmate in the custody and control of defendant, brought this action for negligence arising out of an alleged attack upon him by another inmate. On May 14, 2014, the court entered partial summary judgment in favor of defendant as to any alleged failure on the part of defendant to prevent the assailant from initiating the attack, leaving for trial plaintiff's claim that Corrections Officer John Carpenter was negligent in failing to timely intervene and prevent further harm to plaintiff once he became aware of the altercation. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2} Plaintiff testified that on December 2, 2012, around 6:30 or 7:00 p.m., he left the chow hall after supper and proceeded to the dayroom, or common area, of his housing unit. Plaintiff stated that he saw an unknown female corrections officer (CO) who was not regularly assigned to the unit standing just outside the entrance, and he also walked past CO Carpenter at the officers' desk in the common area of the unit. Plaintiff recalled that he proceeded to the stairs, intending to go to his cell on the second range, but as he started up the stairs he saw inmate Taranta Fuller seated at a table in the common area with a chessboard. Plaintiff testified that he turned around and spoke to Fuller and they agreed to play a game of chess.

{¶3} Plaintiff testified that when he sat down on one of the bench-style seats at the table, he faced the officers' desk, which he estimated to be about 30 feet away, and he saw CO Carpenter standing there, looking down at paperwork or something else on the desk. Plaintiff stated that the female CO was still outside the unit at that point. According to plaintiff, the chess game had just gotten underway, with each player having made one move, when he felt a stinging blow to the left side of his head. Plaintiff testified that Fuller got up immediately, and as he looked up he saw to his right the assailant, Jeffrey Piorkowski, wielding a belt with a lock attached to the buckle, and he saw Carpenter looking over but not yet taking any action.

{¶4} Plaintiff stated that Piorkowski continued to swing the belt at him, and while he was able to deflect some of the blows with his hands, he was hit in the head about five times. Plaintiff testified that in the course of trying to defend himself, his foot got caught on the table and he fell to the ground, where he estimated that he remained for 30 to 45 seconds. Plaintiff recalled seeing Carpenter standing about 10 feet behind Piorkowski at this point and ordering all the other inmates to lock down in their cells, but making no effort to intervene. Plaintiff stated that Piorkowski fell on top of him and they proceeded to wrestle, first on the ground, and then after getting up they fell onto the table, with plaintiff on top of Piorkowski.

{¶5} Plaintiff testified that the female CO he had seen outside the unit came to the scene, and that one of the COs took the weapon from Piorkowski, but the wrestling continued momentarily. Plaintiff stated that he then heard Carpenter say "break it up," or otherwise give some order to stop. Plaintiff, who acknowledged that everything was "blurry" by this point, testified that Carpenter then pulled him by his arm and administered pepper spray. Plaintiff stated that the altercation concluded once the pepper spray was used. According to plaintiff, there was a pool of blood on the ground afterward from a wound to the back of his head, as can be seen in a photograph of the scene. (Plaintiff's Exhibit 1.)

{¶6} Plaintiff stated that Carpenter issued him a conduct report afterward for violating institutional rules 21 ("Disobedience of a direct order") and 19 ("Fighting – with or without weapons, including instigation of, or perpetuating fighting"). (Plaintiff's Exhibit 8.) Plaintiff asserts, though, that his actions in the altercation were in self-defense and that he did not hear Carpenter give any direct order until the altercation was nearly over with. On December 5, 2012, plaintiff submitted an informal complaint through the prison grievance process, complaining that Carpenter had not timely intervened during the altercation. (Plaintiff's Exhibit 6.) At trial, plaintiff explained that Carpenter appeared to be aware of the incident immediately after plaintiff was struck in the head the first time, and although plaintiff allowed that Carpenter probably could not have made it over from the desk in time to prevent the first two or three blows to plaintiff's head, Carpenter could have intervened physically or with pepper spray and stopped the altercation anytime thereafter.

{¶7} Inmate Benny Byron, Jr. testified that he lived in the same housing unit and was acquainted with plaintiff. Byron recalled that at the time of the incident, he was sitting in the common area watching a Cleveland Browns football game on television, very near plaintiff. Byron stated that Piorkowski, whom he described but whose name he did not know, ran up and swung a lock attached to a belt or string at plaintiff and hit plaintiff in the head. Byron explained that he jumped up and momentarily thought about intervening, but changed his mind after looking around at the inmates gathered in the area, realizing that Piorkowski, who is white, appeared to have several white friends or associates standing by, whereas Byron and plaintiff are black.

{¶8} Byron testified that when he looked around the dayroom just as the altercation began, he also observed a CO at the officers' desk looking at the computer, and he further testified that he was not sure when the CO became aware of what was going on as he was most focused on plaintiff, trying to decide whether to get involved. Byron recounted that plaintiff was struck about three times when he fell to the floor and

got entangled with Piorkowski, and according to Byron there was a great deal of commotion by this time from all the inmates watching. Byron stated that the CO came over from the desk, told all the inmates to get in their cells, and said "let him go" at a point when plaintiff, appearing dazed, was holding onto Piorkowski. According to Byron, the CO was standing over plaintiff and Piorkowski with a can of pepper spray in his hand as he gave one or two orders of this nature, and almost immediately after giving those orders he administered the spray. Byron stated that he cannot say how long it took the CO to come over from the desk, but plaintiff had probably been struck about six times before the CO arrived. Byron also stated that he does not remember any other COs coming to the scene.

{¶9} Inmate Taranta Fuller testified by way of deposition (Joint Exhibit 1) that he was not very familiar with plaintiff, but that they lived in the same housing unit and were playing chess when the incident occurred. Fuller testified that the dayroom was full of inmates at the time. Fuller recalled that Piorkowski, whom he described but whose name he did not know, came up from behind plaintiff and hit plaintiff with something, but he could not see exactly what it was. Fuller, who stated that he jumped up and got out of the way, testified that plaintiff put his hands up around his head and got up and started fighting back, and he recalled that plaintiff fell at some point during the altercation.

{¶10} Fuller explained that generally there were two COs assigned to the housing unit every shift, and typically one would be at the officers' desk while the other patrolled. Fuller estimated that the desk was no more than 30 feet away from the table where he and plaintiff were sitting. Fuller stated that he was not exactly sure of the COs' whereabouts when the altercation began, but that it "didn't take them long to get there," as the first CO arrived within one minute. According to Fuller, the first CO to arrive pressed his "man down" button or otherwise requested backup, told plaintiff and Piorkowski to break it up approximately two times within about five seconds, and then

administered pepper spray on both inmates.   Fuller testified that the altercation continued briefly until other COs who responded to the scene physically separated plaintiff and Piorkowski.

{¶11} Corrections Officer John Carpenter testified that his normal work assignment in December 2012 was the second shift in Housing Unit 10A, where these events occurred.   Carpenter stated that he was at the officers' desk writing up a conduct report on the computer when he heard a commotion and saw inmates scattering.   Carpenter stated that he looked over and saw Piorkowski swinging a belt at plaintiff, who was seated at a table approximately 75 feet from the officers' desk. Carpenter testified that within about two seconds he left the desk and began running toward the scene, and he also reported over the radio that a fight was in progress.

{¶12} According to Carpenter, who stated both that he never saw either inmate on the ground and that plaintiff had gotten up from his seat and was squared up with Piorkowski in a fighting stance by the time he got to the scene, he screamed at both inmates to break it up but they disobeyed his commands and continued fighting. Carpenter testified that he also gave Piorkowski two direct orders to drop the weapon, and after the second order Piorkowski did let go of it but continued wrestling with plaintiff, and they ended up on top of the table.   Carpenter testified that he administered pepper spray to the facial area of both inmates yet they carried on wrestling with one another for a moment, but, after putting on gloves due to the presence of blood, he was able to physically separate them and end the altercation.

{¶13} Carpenter stated that his partner that day, a CO Kronick, was a relief officer assigned to the unit for the day and had been out making rounds while he was at the desk.   Carpenter stated that she had come to the scene right around the time he administered the spray, just before he physically separated the inmates, and she was able to clear the other inmates out and secure the area while he dealt with plaintiff and Piorkowski.   Carpenter also stated that some of the COs assigned to work in the prison

yard responded to the scene, but that the altercation was basically over with by the time they arrived. Afterward, Carpenter prepared an incident report (Defendant's Exhibit A) and issued the aforementioned conduct report charging plaintiff with the two rules violations, as well as another conduct report charging Piorkowski with those and several other rules violations. (Defendant's Exhibit B.)

{¶14} Carpenter testified that he attended defendant's training academy when he was hired to work at the prison, and that he continues to regularly receive training from defendant, including use of force and weapons training. Carpenter explained that under defendant's policies, when COs see a fight they are supposed to report it over the radio and deploy the man down button, and he acknowledged that in this case, while he did report the situation over the radio, he did not press his man down button. Carpenter further explained that COs, who are armed with only pepper spray, are supposed to initially give inmates verbal commands to stop fighting, and they are to refrain from physically intervening until backup arrives. Carpenter stated that when an inmate has a weapon, particular attention must be paid to prevent it from being used against other inmates or staff, and he also stated that if blood is involved, COs should take measures to avoid coming into contact with it.

{¶15} "To recover on a negligence claim, a plaintiff must prove by a preponderance of the evidence (1) that a defendant owed the plaintiff a duty, (2) that a defendant breached that duty, and (3) that the breach of the duty proximately caused a plaintiff's injury." *Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP-357, 2006-Ohio-2531, ¶ 10. "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-787, 2013-Ohio-5106, ¶ 8. "The state's duty of reasonable care does not render it an insurer of inmate safety." *Allen v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 14AP-619, 2015-Ohio-383, ¶ 17. "Reasonable care is

that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 04AP-177, 2004-Ohio-5545, ¶ 16.

{¶16} Upon review of the evidence adduced at trial, the magistrate finds that on December 2, 2012, at approximately 7:15 p.m., plaintiff was seated at a table in his housing unit playing chess with inmate Fuller when inmate Piorkowski suddenly came up from behind and struck plaintiff in the head with a lock attached to the buckle of a belt.   The magistrate finds that this caused a commotion among the numerous inmates in the vicinity, at which time CO Carpenter, who was across the room typing up a conduct report at the officers' desk, looked around and saw Piorkowski swinging the belt at plaintiff as he sat at the table, whereupon Carpenter radioed for backup and ran to the scene.   Thus, the magistrate finds that Carpenter did not see Piorkowski's initial attack but became aware shortly after.

{¶17} The magistrate finds that just after the altercation commenced, plaintiff got entangled in the table as he turned around toward Piorkowski, and he was briefly on the floor deflecting blows from the belt that were delivered in quick succession, but that by the time Carpenter became aware of the situation, radioed for backup, and ran to the scene, plaintiff was squared up with Piorkowski and was fighting back.   Indeed, the magistrate finds that plaintiff was either holding onto Piorkowski or laying atop him on the table very soon after Carpenter arrived.   The magistrate finds that Carpenter issued approximately two orders for plaintiff and Piorkowski to stop fighting, and he also acted to secure the weapon by twice ordering Piorkowski to drop it, which he did, and at this point CO Kronick, who had been on foot patrol in or around the housing unit, responded to the scene and helped secure the scene by getting the other inmates out of the area. The magistrate finds that plaintiff and Piorkowski failed to comply with Carpenter's

orders to stop fighting, and, as Byron and Fuller testified, within seconds after issuing those orders Carpenter administered pepper spray at both plaintiff and Piorkowski. The magistrate finds that plaintiff and Piorkowski continued to wrestle, and, with backup present, Carpenter without delay put on gloves and intervened to physically separate them, which was accomplished with the assistance of Kronick and other COs who arrived just as the matter was concluding.

{¶18} The magistrate finds that Carpenter acted reasonably and substantially complied with defendant's policies relative to inmate fights and the use of force. While it is understandable that the incident seemed much longer to plaintiff, who admitted that parts of the incident are blurry in his memory, the magistrate finds that it transpired more quickly than he described, and at no point did Carpenter idly stand by or otherwise fail to act reasonably in response to the circumstances he was presented with. Although plaintiff argued at trial that Carpenter failed to properly supervise the block so as to prevent the attack or learn of it sooner, as previously stated these were not the issues to be tried. While plaintiff points to the fact that Carpenter did not press his man down button as evidence of negligence, the magistrate finds that Carpenter nonetheless timely requested assistance over the radio, other COs quickly responded to that request, and the evidence does not support a finding that the failure to press the man down alarm proximately resulted in any harm.

{¶19} Based upon the foregoing, the magistrate finds that plaintiff has failed to prove his claim by a preponderance of the evidence. Accordingly, judgment is recommended in favor of defendant.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of*

*any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ROBERT VAN SCHOYCK
Magistrate

cc:

Amber W. Hertlein                       Richard F. Swope
James P. Dinsmore                       6480 East Main Street, Suite 102
Assistant Attorneys General             Reynoldsburg, Ohio 43068
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed March 20, 2015**
**Sent To S.C. Reporter 12/31/15**