[Cite as *White v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-4947.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| DARRELL WHITE | Case No. 2022-00620JD |
| Plaintiff | Magistrate Anderson M. Renick |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brings this action for claims arising from a series of incidents beginning in September 2021, while plaintiff was an inmate under the custody and control of North Central Correctional Complex (NCCC), and which continued at defendant's Richland Correctional Institution (RICI). The issues of liability and damages were tried before the magistrate.[1]

**NCCC Claims**

**Mail**

{¶2} Plaintiff testified that in September of 2021, he was incarcerated at NCCC.[2] Plaintiff testified that while at NCCC, employees directly exposed him to danger through defendant's mail policies. Specifically, plaintiff noted that defendant's institutional mail policy required NCCC employees to open and expose inmate non-legal mail allowing it

---

[1] At the outset of the proceedings, defendant raised an oral motion to continue the trial, arguing that plaintiff had not provided a witness list, or any discovery requests, and that there were jurisdictional issues with plaintiff's complaint. Plaintiff objected to defendant's motion and asked to proceed with the trial. Accordingly, defendant's motion to continue the trial was DENIED. Plaintiff's April 17, 2024 motion to submit "a written rebuttal of closing arguments" is GRANTED.

[2] Throughout the trial, the parties referred to the institution's former name, North Central Correctional Institute (NCCI). The facility is currently known as North Central Correctional Complex (NCCC). *See* https://drc.ohio.gov/about/facilities/north-central-correctional-complex/north-central-correctional.

to be observed by others. Plaintiff stated that at the time he was incarcerated at NCCC, he was involved in a class action suit against the Boy Scouts of America for sexual abuse he suffered while an adolescent. Plaintiff contends that defendant breached a confidentiality agreement which existed between him and the Boy Scouts of America by requiring NCCC's employees to expose his mail. Plaintiff stated that NCCC employees disregarded his requests to have this mail designated as legal mail and continued to open and leave his mail in observable locations. Plaintiff alleged that due to NCCC's negligence, other inmates misinterpreted plaintiff's participation in the Boy Scouts of America case and labeled him a pedophile which resulted in plaintiff being sexually assaulted by other inmates. Plaintiff stated that he filed a Prison Rape Elimination Act report with NCCC, but NCCC refused to allow him to contact the Ohio State Highway Patrol to request an investigation into his allegations.

{¶3} While at NCCC, plaintiff was initially housed with another inmate, David Hollie. While plaintiff shared a cell with Hollie, a knife was discovered in the shared cell. Based on this incident, a Rules Infraction Board (RIB) hearing was held on September 15, 2021, at NCCC. At the hearing, plaintiff stated that the knife belonged to his cell mate, Hollie. Following the RIB hearing, plaintiff notified NCCC of his fears about Hollie, stating that Hollie was "gang affiliated." Plaintiff stated he was later assaulted at the behest of Hollie as a result of his testimony at the RIB hearing. Plaintiff argued that due to these reports, NCCC had prior notice of the various assaults that plaintiff suffered by Hollie and other unnamed inmates.

**Excessive use of force**

{¶4} Following these incidents, plaintiff was moved into a Transitional Program Unit (TPU) at NCCC, referred to as segregation or protective custody, in a cell with inmate Tyshawn Weems. While housed with Weems, plaintiff testified that Corrections Officer (CO) Christian Mathews and Weems got into an oral argument, culminating in Weems spitting on CO Mathews and CO Mathews discharging oleoresin capsicum (OC) spray into the shared cell.

{¶5} CO Mathews testified that he was a Segregation Supervisor while at NCCC. According to CO Mathews, Weems had become irate when he was told that plaintiff would

be sleeping in the bottom bunk.  Escalating the matter, Weems stood on the toilet and took off his shoe, threatening to hit the sprinkler in protest.  In response, CO Mathews unholstered his OC spray and instructed Weems to come to the door so that he could remove Weems from the cell to prevent further escalation.  CO Mathews testified that at this time Weems began threatening to spit on him.  CO Mathews stated that he warned Weems that he would be maced if he did spit on him.  CO Mathews testified that Weems initially complied, but when Mathews opened the cuff chute, Weems turned around and spit on him.  CO Mathews deployed roughly 81 grams, or a two-second burst, of OC spray into the cell to prevent any further resistance from Weems.  CO Mathews testified that a two-second burst of OC spray is a technique that MTC trained its employees to use in such situations.  CO Mathews testified that plaintiff could not exit the cell prior to Weems because MTC policy required both inmates to be cuffed before either one could exit the cell.

{¶6} Plaintiff argues that CO Mathews used excessive force and that contrary to defendant's policies, he was not provided the opportunity to cuff up and leave the cell before CO Mathews used OC spray.  On cross-examination, CO Mathews testified that plaintiff was given an opportunity to cuff up when Weems was instructed to do so, but Weems was the first to approach the cuff port in the cell door.

### Recording

{¶7} Both inmates were taken to the institution infirmary, and while explaining to medical personnel what happened, plaintiff alleges that CO Mathews used his personal cell phone to record plaintiff.  Plaintiff further alleges that CO Mathews showed this video to other inmates which resulted in plaintiff being labeled a snitch and becoming a target of violence by other inmates.

{¶8} CO Mathews further testified that MTC policy required video documentation of the incident as soon as it was safe to do so.  Once backup arrived, he followed MTC policies and used his cell phone to record both the aftermath at plaintiff's cell and the rest of the incident, including the inmates' follow up with medical.  However, CO Mathews testified that he had not discussed or shared the video with any other inmates.  CO

Mathews acknowledged that plaintiff's conduct was not a concern during the entirety of the Weems incident.

### Retaliation

{¶9} Plaintiff alleged that following the incident, Weems filed charges against CO Mathews for excessive force. Plaintiff stated that Weems' attorney, Andrew Wick, sought plaintiff's testimony regarding the incident. Plaintiff testified that because of this communication, CO Mathews retaliated against plaintiff.

{¶10} According to plaintiff, during an RIB hearing, he informed NCCC staff of both the threat of violence from Hollie and Weems, and alleged retaliation by CO Mathews. CO Mathews testified that he was not made aware of either the RIB hearing or that plaintiff had filed any grievances against him, and that no separation orders were issued between plaintiff and Hollie or Weems. At plaintiff's request during the RIB hearing, plaintiff was moved back into the TPU based upon his fear of other inmates.

{¶11} Plaintiff remained in the TPU at NCCC for eight months. Plaintiff related that during this time, CO Mathews continued to retaliate against him by routinely spitting, urinating, and defecating in plaintiff's food. On cross-examination, CO Mathews denied that he had ever spat, urinated, or defecated in plaintiff's food. Plaintiff testified that these conditions, and the general conditions of his time in the TPU, placed him under "duress" and that his signature for release into general population occurred while under duress. However, plaintiff acknowledged that he voluntarily left TPU protection to reenter general population and participate in a voluntary program that allowed him to reduce his remaining sentence. Plaintiff was subsequently transferred to RICI.

## RICI Claims

{¶12} After plaintiff arrived at RICI, CO Mathews obtained a job with ODRC and began working the third shift at RICI, in plaintiff's cell block. Plaintiff alleged that upon beginning work at RICI, CO Mathews continued to harass and retaliate against him. Plaintiff contends that RICI had prior notice of CO Mathews' behavior because he had filed grievances about CO Mathews. CO Mathews testified that he was not made aware by RICI that plaintiff had filed any grievances against him and that the only discipline he

had received was for missing a training session. Plaintiff stated that due to his interactions with CO Mathews, plaintiff sought protection from defendant's employee, but defendant denied his request.

{¶13} Additionally, plaintiff testified that after he had arrived at RICI, Hollie was transferred from NCCC to RICI and placed in the same cell block as plaintiff. Plaintiff alleges that beginning on August 11, 2022, after the arrival of Hollie at RICI, Hollie and other inmates assaulted plaintiff in the showers daily. Plaintiff argues that the assaults and grievances he filed while housed at NCCC were enough to establish that RICI had prior notice of impending assaults by Hollie. Plaintiff testified that he appealed all the grievances submitted to NCCC and RICI. Plaintiff argued that the appeal of grievances, at both private institutions and facilities under the direct supervision of ODRC, are handled by ODRC; and accordingly, defendant would have notice of plaintiff's grievances while he was housed at NCCC. Plaintiff further alleges that defendant "concealed" these actions and intentionally destroyed his grievances and reports three days prior to his release from defendant's custody.

## Conclusions of Law and Analysis

### MTC Claims

{¶14} As an initial matter, the court notes that many of the events alleged by plaintiff occurred while he was housed at NCCC, a private prison operated by MTC, and the acts or omissions underlying plaintiff's claims were those of MTC employees. ODRC is only liable for those acts and omissions of its agent, rather than its independent contractor. *Wright v. Ohio Dept. of Rehab & Corr.*, 2014-Ohio-4359, ¶ 8-10 (10th Dist.); *Dent v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-5557, p. 5-12 (Ct. of Cl.), adopted 2015 Ohio Misc. LEXIS 81. Plaintiff has the burden of proving agency status, which is a determination based on multiple factors. *Gardner Plumbing Inc. v. Cottrill,* 44 Ohio St.2d 111, 115 (1975). Those factors include whether ODRC controls the details of the work; whether ODRC controls the hours MTC employees worked; whether ODRC and MTC have the right to terminate their relationship at will; and whether ODRC and MTC believe that they have created an independent contractor relationship. *Wright,* ¶ 8-10; *Dent, supra.*

{¶15} In *Dent*, an inmate at NCCC asserted that employees of MTC were negligent in treating a medical condition caused by the administration of chemical spray. The court analyzed the issue following the Tenth District Court of Appeals holding in *Wright* and concluded that: 1) the details of the work performed by the MTC personnel at NCCC were controlled in substantial part by MTC; 2) MTC performed its work in the course of defendant's business; 3) MTC was paid to operate NCCC pursuant to a contract with the state of Ohio, and NCCC personnel were in turn paid by MTC, not defendant; 4) MTC controlled the hours worked by the NCCC personnel; 5) although the state of Ohio furnished the NCCC premises, MTC procured the equipment and supplies necessary to operate the institution; 6) the state of Ohio has the right to terminate its contract with MTC at will; and 7) it was plainly evident from the contract documents that the parties intended to create an independent contractor relationship. *Id.*

{¶16} The court concluded that MTC served as an independent contractor rather than an agent of the state and that this conclusion was consistent with past precedent from this court. *Id.*; See *Anthony v. Lake Erie Corr. Inst.*, 11th Dist. Ashtabula No. 2005-A-0009, 2006-Ohio-742, ¶ 24, citing R.C. 9.06. (finding that it has been consistently held that neither privately operated correctional institutions nor their operators are agencies of the state.); *Cruz v. Lake Erie Corr. Inst.*, Ct. of Cl. No. 2007-05768 (Dec. 13, 2007), affirmed in *Cruz v. Lake Erie Corr. Inst.*, 10th Dist. Franklin No. 08AP-42, 2008-Ohio-3694; *Bell v. Management & Training Corp.*, Ct. of Cl. No. 2002-04160, 2002-Ohio-3532.

{¶17} In this case, the court finds that plaintiff has failed to show that MTC is defendant's agent. CO Mathews' testimony established that while working at NCCC, he was employed by MTC, a private company that controlled and operated NCCC. CO Mathews further testified that MTC, and not defendant, hired, supervised and trained NCCC staff. CO Mathews related that MTC created his work schedule and provided his equipment and paychecks. The court concludes that the preponderance of the evidence shows that NCCC and MTC are independent contractors and not agents of defendant ODRC.

{¶18} "The only defendant in original actions in the court of claims is the state." R.C. 2743.02(E). Civ.R. 12(H)(3) states, however, that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter,

the court shall dismiss the action."  Accordingly, it is recommended that plaintiff's claims of negligence due to the alleged assaults by Hollie, and retaliation by CO Mathews between September of 2021 and August of 11, 2022 at NCCC be dismissed without prejudice for lack of subject matter jurisdiction.

**Mail**

{¶19} Plaintiff's claim related to NCCC and ODRC policies regarding the institution's processing of legal mail.  It is well settled that issues involving an inmate's mail are treated as conditions of confinement claims, which is a violation of a parties' constitutional rights.  *Bleicher v. Univ. of Cincinnati Coll. of Med.*, 78 Ohio App.3d 302 (10th Dist. 1992).  It is well-settled that the court of claims does not have jurisdiction to hear constitutional claims brought against the state.  *Id.*  It is also a well-established principle of law that the state of Ohio is not a "person" within the meaning of Section 1983, Title 42, U.S. Code; therefore, such actions cannot be brought against the state.  *White v. Chillicothe Corr. Inst.*, 1992 Ohio App. LEXIS 6718 (10th Dist. December 29, 1992).  Therefore, plaintiff's claim about the processing of mail constitutes a constitutional claim or a claim under Section 1983, such that this court is without jurisdiction.

{¶20} Additionally, prison regulations, including those contained in the Ohio Administrative Code (OAC), "are primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates."  *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479 (1997), citing *Sandlin v. Conner*, 515 U.S. 472, 481-482 (1995).  Moreover, this court has held that "even if defendant had violated the Ohio Administrative Code, no cause of action would exist in this court.  A breach of internal regulations in itself does not constitute negligence."  *Williams v. Ohio Dept. of Rehab. & Corr.*, 67 Ohio Misc.2d 1, 3 (10th Dist. 1993).  Accordingly, to the extent that plaintiff alleges that ODRC and NCCC somehow violated internal prison regulations and the OAC in not designating his mail as legal mail, by recording the NCCC incident, or in investigating plaintiff's allegations, plaintiff fails to state a claim for relief.  *See Sharp v. Ohio Dept. of Rehab. & Corr.*, 2008-Ohio-7064, ¶ 5 (Ct. of Cl.).

**RICI Claims: Retaliation**

{¶21} Plaintiff also contends that, after being hired by ODRC, CO Mathews continued his retaliatory conduct against him at RICI. Claims of retaliatory conduct based on an inmate's use of the word "retaliation" are treated as arising under 42 U.S.C. 1983. *Cotten v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-2619, ¶ 18-20 (10th Dist.). "It is well-established that the Court of Claims lacks subject-matter jurisdiction over alleged violations of constitutional rights and claims arising under Section 1983, Title 42, U.S. Code ('§1983')." *Guillory v. Ohio Dept. of Rehab. & Corr.*, 2008-Ohio-2299, ¶ 12 (10th Dist.). Accordingly, this court does not have subject matter jurisdiction over plaintiff's claims of retaliatory conduct.

{¶22} Next, plaintiff argued that while housed at RICI, defendant was negligent for housing him in the same cell block with Hollie, with whom he had had issues with while housed at NCCC. "To establish negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury resulting proximately therefrom." *Taylor v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-4792, ¶ 15 (10th Dist.). "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-5106, ¶ 8 (10th Dist.). "The state, however, is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Franks v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-1519, ¶ 17 (10th Dist.). "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 2004-Ohio-5545, ¶ 16 (10th Dist.).

{¶23} "Prison officials are the acknowledged experts in the placement and management of their prisoners. 'Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security.' *Bell v. Wolfish* (1979), 441 U.S. 520, 547, 60 L. Ed. 2d 447, 99 S. Ct. 1861." *Kordelewski v. Ohio Dept. of Rehab. & Corr.*, 2001 Ohio App. LEXIS 2730, *10-11 (10th Dist. June 21, 2001). Additionally, prisoner placement is a discretionary

decision not subject to review. "It is also well-settled that the state is immune from liability for its legislative or judicial functions, or for the exercise of executive functions that involve a high degree of official judgment or discretion." *Reynolds v. State*, 14 Ohio St.3d 68, 70 (1984); *see also Von Hoene v. State*, 20 Ohio App.3d 363, 364 (1st Dist. 1985). Therefore, claims arising out of plaintiff's placement in the same cell block as Hollie are not recoverable.

### Negligence (Impending Assault)

{¶24} Finally, plaintiff contended that ODRC had prior notice of an impending assault by inmate Hollie against plaintiff while they were housed in the same cell block at RICI due to the grievances filed at NCCC. "When one inmate attacks another inmate, 'actionable negligence arises only where prison officials had adequate notice of an impending attack.'" *Skorvanek v. Ohio Dept. of Rehab. & Corr.,* 2018-Ohio-3870, ¶ 29 (10th Dist.), quoting *Metcalf v. Ohio Dept. of Rehab. & Corr.*, 2002-Ohio-5082, ¶ 11 (10th Dist.); *Watson v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1017, ¶ 9 (10th Dist.) ("The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault"). "'Whether ODRC had or did not have notice is a question that depends on all the factual circumstances involved.'" *Skorvanek* at, ¶ 29, quoting *Frash v. Ohio Dept. of Rehab. & Corr.*, 2016-Ohio-3134, ¶ 11 (10th Dist.).

{¶25} "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Lucero v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-6388, ¶ 18 (10th Dist.). "Whenever the trier of fact is entitled to find from competent evidence that information was personally communicated to or received by the party, the notice is actual. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *Hughes v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4736, ¶ 14 (10th Dist.).

{¶26} Although plaintiff informed NCCC staff of the threat posed by inmate Hollie, plaintiff failed to provide any credible evidence to corroborate his testimony that he informed defendant, while housed at RICI, that an assault by Hollie was forthcoming.

Plaintiff failed to establish that he requested protective custody or informed defendant's staff at RICI that he feared for his safety following the transfer of Hollie. Plaintiff instead argues that his grievances filed while at NCCC put defendant on notice that an assault was imminent. The court is unpersuaded. CO Mathews testified credibly that he was not aware of any problems between plaintiff and Hollie or any request by plaintiff to be moved to protective custody while at RICI. Plaintiff failed to offer any credible evidence to demonstrate that RICI was aware of issues that arose while plaintiff and Hollie were housed at NCCC.

{¶27} Nor did plaintiff present evidence contradicting CO Mathews' testimony that he was first made aware of a problem between plaintiff and inmate Hollie after plaintiff filed this action. Additionally, plaintiff failed to show that ODRC had destroyed the records of his reports prior to his release. CO Mathews testified credibly that he was able to locate some relevant records. Even if the court found that plaintiff had made verbal or formal requests related either to protection or that inmate Hollie was "gang affiliated," vague statements that the two inmates were not getting along does not rise to the level of adequate notice of an impending attack. *See Jackson v. Ohio Dept. of Rehab. & Corr.*, 2000 Ohio App. LEXIS 1671, 9 (10th Dist. Apr. 18, 2000) (finding no notice of an impending attack where the inmate made only vague statements that he needed to get off the range or be moved off the range but did not request protective custody or directly express fear of an impending assault).

{¶28} The court finds that plaintiff failed to offer credible evidence that he sent a kite or other communication stating that he feared for his safety while housed at RICI, nor did he inform defendant that he was likely to be attacked by Hollie or anyone else. Plaintiff acknowledged that he knew how to seek protective custody and how to notify defendant of a potentially dangerous situation, but he failed to do so at RICI. Upon review of the evidence, the court finds that plaintiff failed to prove by a preponderance of the evidence that defendant had either actual or constructive notice of an impending attack on plaintiff by Hollie.

{¶29} Based upon the foregoing, the magistrate finds that plaintiff failed to satisfy his burden of proof to establish that defendant had notice of an impending attack and that defendant breached its duty of reasonable care, or that defendant was negligent in its

care for plaintiff after the incident.  Therefore, the magistrate recommends that judgment be entered in favor of defendant.

{¶30} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON RENICK
Magistrate

**Filed September 6, 2024**
**Sent to S.C. Reporter 10/14/24**