[Cite as *Vectren Energy Deliver of Oh., Inc. v. Bansal Construction, Inc.*, 2018-Ohio-2861.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| VECTREN ENERGY DELIVERY OF OHIO, INC. | : | |
| | : | |
| | : | Appellate Case No. 27815 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2017-CV-1782 |
| v. | : | |
| | : | (Civil Appeal from |
| BANSAL CONSTRUCTION, INC. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of July, 2018.

. . . . . . . . . .

AMANDA RASBACH YURECHKO, Atty. Reg. No. 0072458, 323 W. Lakeside Avenue, Suite 200, Cleveland, Ohio 44113
        Attorney for Plaintiff-Appellee

THOMAS R. YOCUM, Atty. Reg. No. 002437, 300 Pike Street, Suite 500, Cincinnati, Ohio 45202
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1}  Bansal Construction, Inc., appeals from a judgment of the Montgomery County Court of Common Pleas, which entered summary judgment in favor of Vectren Energy Delivery of Ohio, Inc., in a dispute related to an accidental strike of an underground gas line.

{¶ 2} For the following reasons, the judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

{¶ 3}  In October 2016, Bansal Construction was working in the vicinity of 1246 North Keowee Street in Dayton, at the intersection with East Helena Street, installing light pole foundations and conduits.  Bansal personnel notified the Ohio Utilities Protection Service (OUPS), pursuant to R.C. 153.64(C), of its intent to conduct excavation in that area, so that utility companies would be notified to mark the location of their underground utilities in the construction area.   However, on October 12, 2016, Bansal struck a gas line owned by Vectren during its excavations.

{¶ 4}  On April 12, 2017, Vectren filed a complaint against Bansal.   The complaint alleged that Bansal performed excavation "without informing itself" of Vectren's gas line or, in the alternative, negligently excavated despite notice of Vectren's gas line, causing damages in the amount of $6,475.50, plus interest.   Bansal filed an answer denying the allegations.   On October 6, 2017, Vectren filed a motion for summary judgment, which was supported by an affidavit from one of its employees; several exhibits were attached to the affidavit, including Exhibits 3 and 4, which were photographs.   The motion for summary judgment stated that Exhibit 3 showed that Vectren marked the gas lines prior to the excavation and that Exhibit 4 showed the same area after the damage.

{¶ 5}  Bansal did not respond to the motion within 14 days, as required by Loc.R. 2.05(B)(2)(b) of the Montgomery County Court of Common Pleas, General Division, and by the trial court's final pretrial order of May 12, 2017.  On October 26, 2017, the trial court sustained Vectren's motion for summary judgment.  The next day, Bansal filed a memorandum in opposition to summary judgment, as well as an affidavit from its project manager for the Keowee Street project.  On November 3, 2017, Bansal also filed a motion for relief from judgment.

{¶ 6}  On November 22, 2017, Bansal filed a notice of appeal from the summary judgment.  The trial court had not yet ruled on the motion for relief from judgment at that time, and it could not do so once the notice of appeal was filed.  Issues related to the motion for relief from judgment are not before us.

### Requirements for Marking Utilities

{¶ 7}  By statute, contractors are required to contact OUPS about planned excavation so that utility lines may be marked before any excavation is done.  R.C. 3781.28(A).  In response to such notice, each utility must locate and mark its underground utilities facilities within 48 hours; the failure to do so is deemed to be notice that no facilities are in the area.  R.C. 3781.29(A).  Gas transmission and distribution "facilities" must be marked with "high visibility safety yellow" markings.  R.C. 3781.29(C)(1). The approximate location of the lines reflected by the markings, or the "tolerance zone," is "the site of the underground utility facility including the width of the underground utility facility plus eighteen inches on each side of the facility."  R.C. 3781.25(E). The excavator is required to conduct excavation within the tolerance zone "in a careful, prudent, and nondestructive manner" to prevent damage to utilities.  R.C.

3781.30(A)(4).   The excavator is also required to protect and preserve the markings of the utility lines until they are no longer needed for safe excavation.   R.C. 3781.30(A)(2).

### Summary Judgment Standard

{¶ 8}   Bansal Construction argues that the trial court erred in granting summary judgment because genuine issues of material fact existed and because Vectren's motion for summary judgment was not supported by materials that complied with Civ.R. 56(C). Bansal also argues that there were problems with the judgment entry.

{¶ 9} Summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party.   Civ.R. 56(C); *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).   The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated.   *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).   To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C), "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," to show that there is no genuine issue as to any material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 10}   Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings.   *Dresher* at 293; Civ.R. 56(E).   Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is

a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 11} We review the trial court's ruling on a motion for summary judgment de novo. *Hudson v. Petrosurance, Inc.,* 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29; *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond*, 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

*Analysis*

{¶ 12} Initially, Bansal argues that this court should consider its memorandum in opposition to Vectren's motion for summary judgment, notwithstanding that it was filed after the trial court entered summary judgment, because it was filed only one day after the judgment. Bansal cites no support for this position, and we are aware of none. Accordingly, we will consider only the materials that were properly before the trial court when it entered summary judgment.

{¶ 13} Bansal also argues that "there was no evidence before the Court upon which the Court could have relied in granting Vectren's Motion for Summary Judgment" and that Vectren did not meet its initial burden of affirmatively demonstrating that no genuine issue of material fact remained to be litigated. Bansal finds fault, in several ways, with the affidavit of "Darlene Kulhanek,"[1] which was attached to Vectren's motion

---

[1] The name of the affiant was hand-printed on a blank line at the top of the affidavit; the rest of the affidavit was typewritten, and the affidavit was signed in cursive. The spelling of the name is unclear in both places where it appears, and the person's name is not

for summary judgment and was, along with its attachments, the only material submitted by Vectren in support of summary judgment.

{¶ 14} Bansal's argument is based, in part, on its assertion that an affidavit offered in support of a motion for summary judgment must be "filed separately" and "appear on the docket" in order for it to be considered. Bansal cites only one case in support of this position, and the holding in that case was much more narrow than Bansal suggests. *See Waldeck v. North College Hill*, 24 Ohio App.3d 189, 493 N.E.2d 1375 (1st Dist.1985). *Waldeck* dealt with answers to interrogatories that had not been filed with the court.

{¶ 15} Civ.R. 56(C) permits consideration of certain enumerated materials, including affidavits, "timely filed in the action." We reject Bansal's suggestion that "timely filed" necessarily means "filed separately" or "appear[ing] on the docket." The attachment of an affidavit to the motion for summary judgment did not provide a basis for denial of the motion.

*Personal Knowledge*

{¶ 16} Bansal also argues that, even if the affidavit were properly filed, it "failed substantively" and was "deficient" because Kulhanek had no personal knowledge of some of the matters contained in the affidavit.

{¶ 17} Civ.R. 56(E) states, in part:

Supporting and opposing affidavits shall be made on personal knowledge,

shall set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated in

referenced in the motion for summary judgment itself. Thus, we are not certain that we have correctly identified the affiant.

the affidavit. * * *

{¶ 18}   The affidavit did not contain Kulhanek's name in type-written form, and the motion for summary judgment did not identify her.   Within the affidavit, Kulhanek was identified as "the authorized representative" of Vectren, without further indication of her role or responsibilities within the company.   The affidavit then stated that Kulhanek made the affidavit "on [her] personal knowledge and personal knowledge based on the records" of Vectren, and that the exhibits attached to the affidavit were "true and accurate copies which were kept in the ordinary course of business."    Exhibits 2 through 6 were attached to Kulhanek's affidavit (which was marked as Exhibit 1).

{¶ 19}  We agree with Bansal that Kulhanek's affidavit and the documents attached to it have several shortcomings.

*Case References*

{¶ 20}   Kulhanek says that she is "making the within Affidavit in support of the claims filed in the case captioned, *Vectren Energy Delivery of Ohio, Inc. v. Bansal Construction, Inc.* which is Case No. 2017 CVF 01782 in the *Shelby County* Court of Common Pleas."   (Emphasis added.)   The case before the Montgomery County Court of Common Pleas has that caption and a similar case number (2017 CV 01782).   The reference to Shelby County is probably a typographical error; nonetheless, the affidavit incorrectly identifies the case in which it is offered.

*Exhibit 2*

{¶ 21}   Exhibit 2 is titled "MAXIMO – Work Order Tracking (LEAK)," and it is a form which references the need for a repair of a gas line at 1246 N. Keowee, reported on October 12, 2016.   In the "remarks" section, it states that a "contractor knocked off a 8x1

[inch] serv tee from the 8 [inch] MMP main" and summarizes the work that was done to repair it. Exhibit 2 is not referenced anywhere in Kulhanek's affidavit. Even assuming the document is what it purports to be (a work order related to the gas line strike), it was not properly authenticated, was not evidentiary material permitted by Civ.R. 56(C), and thus did not provide a proper basis for summary judgment.

*Exhibits 3 & 4*

{¶ 22} Exhibits 3 and 4 are black-and-white photographs of the excavation site surrounding the gas line strike on N. Keowee Street.[2]

{¶ 23} Kulhanek's affidavit described how Vectren routinely responds to an OUPS ticket request for the marking of gas lines. The affidavit stated that, "upon notification from OUPS of a ticket request, Vectren's agent is dispatched to mark its underground gas lines with yellow paint and to photograph the marks placed, by the person who places the marks, at the time the marks were laid. * * * When a damage occurs Vectren's agent returns to photograph the area of the damage in relation to its prior marks, and measure the distance from any visible marks to the actual damage." The affidavit went on to state that Exhibits 3 and 4 "reflect that the gas lines were marked prior to the incident, and that upon returning the damaged gas line was within the 18 [inch] tolerance zone for those marks."

{¶ 24} The photographs indicate that they were taken on October 12, 2016 at 4:39:04 p.m. and 4:42:16 p.m.; this is the date alleged in the complaint that the damage

---

[2] The photographs contained in the appellate record are black-and-white. However, we reviewed these documents on the Montgomery County Clerk of Court's website, and we are aware that the trial court had access to color photographs. Although we are constrained to consider the record certified to us (i.e., the black-and-white pictures), we note that consideration of the color photographs would not have affected our conclusions.

by Bansal occurred. Although we can infer that Exhibits 3 and 4 were taken after the damage, they do not reflect that the lines were (or were not) "marked prior to the incident," as the motion for summary judgment alleges and as Kulhanek stated in her affidavit.

{¶ 25} Kulhanek did not claim to have taken any pictures -- either before or after the damage to the gas line – nor does she claim to have been present when the pictures depicted in Exhibits 3 and 4 were taken. Thus, she did not demonstrate that she had personal knowledge of these matters. Although Kulhanek generally asserted that pictures are taken when markings are made (prior to excavation), no pictures of markings placed prior to excavation were attached to her affidavit, and she did not explain the basis for her conclusory statements that Exhibits 3 and 4 reflect that "the gas lines were marked prior to the incident." The pictures attached to her affidavit were taken after excavation had begun, and they do not depict how any markings appeared – if they in fact existed -- before excavation began.

{¶ 26} Further, Kulhanek stated in her affidavit that gas lines are marked with "yellow paint," but Exhibits 3 and 4 are black-and-white pictures. Therefore, it is impossible to tell if yellow markings are depicted.[3]

{¶ 27} There appears to be a circle marked in the center of Exhibit 3, but this circle does not appear to be, in itself, indicative of the placement of any gas line. There also appears to be a diagonal line in the picture, but it runs at an angle that did not intersect with the excavation or within 18 inches of the gas line strike. It cannot be determined from the black-and-white photograph if this marking was yellow, or if it even was a marking related to utility placement, and the line's direction does not suggest that it intersected

---

[3] Even in the color pictures, the markings do not appear to be yellow.

with the excavation.

**{¶ 28}** The second picture, Exhibit 4, is a close-up picture of a hole in the ground and perhaps shows the location where the gas line was struck, although this fact is not expressly stated in the affidavit. There is some indication of markings on the pavement near the hole, but the color of the markings is unidentifiable. A ruler that marks "0" (with an downward arrow) at its center and extends 18 inches on each side is positioned with the "0" within the alleged paint markings, and a tool which may mark the point of the gas line strike is positioned behind the ruler within the span of 18 inches. Again, the color of the markings purportedly depicted in Exhibit 4 is not ascertainable, nor is it clear that the markings are utility markings at all.

**{¶ 29}** Kulhanek asserts that the two pictures attached to her affidavit "reflect that the gas lines were marked prior to the incident" and that the damaged gas line was within 18 inches of the markings. In keeping with our de novo review of the record on appeal from summary judgment, we have carefully examined Exhibits 3 and 4. Because the photographs are in black and white, because it is not evident from the affidavit or pictures when the alleged markings were made, and because the affidavit and pictures provide no reference points for Vectren's markings, we simply cannot ascertain whether there were any yellow markings in the vicinity of the excavation, much less within 18 inches of the gas line, prior to Bansal's gas line strike. Indeed, it is unclear whether the exhibits show any relevant markings. These exhibits did not support Vectren's argument that no genuine issue of material fact remained to be litigated.[4]

---

[4] Because Bansal's response was not timely filed and was not before the trial court when it ruled on the motion for summary judgment, we do not consider Bansal's argument that Vectren's agents placed yellow markings in the vicinity of the excavation after the gas line

*Exhibits 5 & 6*

**{¶ 30}**    Exhibit 5 is an Invoice issued by Vectren to Bansal for damage to the gas line at 1246 N. Keowee.   Exhibit 6 is a multi-page document titled "Risk Management Facilities Damage Reporting System," which contains calculations supporting the line-items of the invoice to Bansal by category: gas loss, labor, equipment/ vehicle use, and materials.

**{¶ 31}**   Exhibits 5 and 6 relate to the manner in which Vectren calculated the costs it incurred in repairing the damaged gas line.   In her affidavit, Kulhanek asserted that these documents "accurately reflect" the cost of the repairs made by Vectren, and she discussed in some detail the manner in which the calculations were made.   For example, she stated that the cost of labor is based on job classifications in union and other contracts, plus "A&G expenses,"[5] that the hourly costs to operate a vehicle were "based on a study of the cost for Vectren to operate that certain type of vehicle per hour in the past year," that administrative expenses are applied to the costs of any construction job, and that "Vectren builds no profit into the cost of these jobs, but strives to accurately reflect the true cost of a construction job, whether seeking to apply the cost internally, or to recover from a third party."   She also stated that all studies of expenses and costs performed by Vectren were performed according to generally accepted accounting

---

strike, moments before taking the pictures attached to Kulhanek's affidavit.

[5] The paragraphs of Kulhanek's affidavit addressed to Exhibits 5 and 6 contain numerous references to the inclusion of "A&G expenses."   This term is not defined, but it is alternately referred to as "overhead," "administrative expense overheads," and "overheads * * * determined by a study measuring the cost of doing business, or maintaining employees who perform work to support construction projects, such as this repair, but whose time is not directly chargeable, for each project," such as "human resources, information technology, accounting and legal support."

principles and as mandated by the Public Utilities Commission of Ohio.

{¶ 32} There is no indication in Kulhanek's affidavit that she was involved in any of the cost studies to which she refers, that she prepared the invoice to Bansal or any of its supporting documents, or that she holds a position that would likely give her personal knowledge of these processes.

{¶ 33} In sum, Civ.R. 56(E) requires that affidavits be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Kulhanek's affidavit purported to address many functions within Vectren's operations, but she did not specifically claim to have personal knowledge of any of these functions. Her suggestion that her "personal knowledge" was "based on the records of" Vectren presupposed that her statements fell within the business records exception, and did not establish actual personal knowledge of the matters contained in the records. *See, e.g., Fifth Third Mtge. Co. v. Campbell*, 2d Dist. Montgomery No. 25458, 2013-Ohio-3032, ¶ 8, quoting *State v. Davis*, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362 (1991) (witness "must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business").

*Business records*

{¶ 34} Having concluded that Kulhanek's affidavit did not establish personal knowledge of the matters it addressed, we must also consider whether the documents attached to her affidavit were admissible as business records. It is possible for a custodian of business records to authenticate them, such that they are admissible under Evid.R. 803(6) and may be considered in support of summary judgment.

**{¶ 35}** Evid.R. 803(6) provides that certain materials are not excluded by the hearsay rule, including:

> **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**{¶ 36}** Generally, business records can be authenticated " 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.' " *Wells Fargo Fin. Ohio 1, Inc. v. Robinson*, 2d Dist. Champaign No. 2016-CA-23, 2017-Ohio-2888, ¶ 14, citing *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 30 and Evid.R. 901(A). Authenticating a business record does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document, but the witness must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business. *Robinson*

at ¶ 14. (Other citations omitted.) "Generally, the business record exception [to the hearsay rule] requires that some person testify as to the regularity and reliability of the business activity involved in the creation of the record." *State v. Richardson*, 2d Dist. Montgomery No. 26649, 2016-Ohio-8081, 75 N.E.3d 831, ¶ 39, citing *Ohio Receivables, L.L.C. v. Williams,* 2d Dist. Montgomery No. 25427, 2013-Ohio-960, ¶ 14. *See also* Evid.R. 803(6).

**{¶ 37}** Kulhanek's affidavit contained no statements asserting that she was a custodian or keeper of records within Vectren, was familiar with its record-keeping processes, or held a position in which she was likely to be familiar with Vectren's records or record-keeping processes. However, even if the photographs could be considered, they do not reflect that the required markings were made in the time or manner required by statute so as to shift the burden to the non-moving party (Bansal) for purposes of summary judgment.

**{¶ 38}** The evidence offered by Vectren in support of its motion for summary judgment did not comply with the requirements of Civ.R. 56 and, especially given that the evidence must be construed most strongly in favor of the non-moving party, did not establish that there was no genuine issue of material fact as to Bansal's liability. As such, summary judgment was improperly granted.

*Form of Judgment Entry*

**{¶ 39}** Finally, Bansal argues that the trial court's judgment entry is "flawed on its face and should be reversed" because it may violate Loc.R. 2.19 of the Montgomery County Court of Common Pleas (regarding ex parte orders), improperly states that Vectren is "entitled to a Judgment and Decree of Foreclosure," and contains the phrase

"Error! Reference source not found." Insofar as we have found that the evidence did not support the trial court decision to grant summary judgment, and the judgment will be reversed, this argument is moot.

{¶ 40} The assignment of error is sustained in part and overruled in part.

{¶ 41} The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, P. J., concurring in judgment only.

HALL, J., dissenting:

{¶ 42} After the plaintiff, Vectren, filed its motion for summary judgment, the defendant, Bansal, failed to respond by the time required by local rule. I agree that we should not consider Bansal's memorandum in opposition, or its affidavit, both of which were filed the day after the trial court entered summary judgment. Accordingly, in my opinion, Bansal has failed to raise the issues it now raises on appeal and those issues are waived.

{¶ 43} We consistently have held that issues not raised in the trial court are waived. This concept applies to summary judgment. In *Credit Invests., Inc. v. Obanion*, 2d Dist. Montgomery No. 26129, 2014-Ohio-5799, we determined that the appellant "never raised a hearsay or authentication challenge to [appellee's] affidavit or the accompanying documents. Absent such a challenge, she has waived her ability to raise those issues on appeal." *Id.* at ¶ 15 (footnote and additional citations omitted); *see also Am. Tax Funding v. Whitlow*, 2d Dist. Montgomery No. 23182, 2010-Ohio-3333, ¶ 13 fn., 3 (recognizing that

an objection to the lack of authentication of summary judgment evidence is waived if not raised in the trial court). For these reasons, I disagree with paragraph 18 of the majority opinion, which questions the authority of the representative who signed Vectren's affidavit and the authenticity of the attached exhibits. Those issues have been waived. To hold otherwise enables those who fail to raise issues, or who fail to respond in the trial court, by giving them a second bite at the apple.

{¶ 44} Moreover, in my opinion, apparent typographical errors, like the wrong county but correct case number in the affidavit, are insufficient to raise a material question of fact, especially when the affidavit is uncontested in the trial court. Likewise, criticism that the name of Vectren's representative is handwritten on a blank line on the affidavit rather than typewritten, or the fact that her name is not referenced in the summary judgment motion itself, is in my opinion inconsequential.

{¶ 45} The affidavit does indicate that it is Vectren's practice, upon an OUPS request, that an agent is dispatched to mark the underground lines with yellow paint and photograph the marks. The submitted photos "reflect that the gas lines were marked prior to the incident," and that the damaged gas lines were within the 18-inch tolerance zone of the marks. My colleagues are critical that the paper copies of the photos in our record are black-and-white photocopies printed out to constitute our record—a paper file generated when an appeal is taken. But the Montgomery County Common Pleas Court has publicly-available electronic filing, and it is readily apparent that the originally-filed photos before the trial court are in living color. The fact that we have not required the clerk's office to provide us with exactly what was reviewed by the trial court (color images) is as much our fault as it is the fault of counsel to fail to inspect our record after it is printed

out and transmitted to the court of appeals. The color photos *do* show markings that could be what the Vectren representative was referring to in the affidavit, and those same markings can be discerned in the black and white photos. In my opinion, it is overly critical to reject the affidavit's written conclusions based upon our interpretation of what we may believe underground utility markings should look like. The affidavit indicates that it is Vectren's practice to have a picture taken both before and after the excavation. Admittedly, the first of the two photographs is not a "before" picture of the markings. But the affidavit does not say that the attached photos are one from before and one from after. It says that "Exhibits 3 and 4, for N. Keowee Street, reflect that the gas lines were marked prior to the incident, and that upon returning the damaged gas line was within the 18" tolerance zone of those marks." Both photographs unquestionably are "after" the event. But, again, even if there is some uncertainty, appellant did not raise any discrepancy in the trial court and did not contest the written conclusion in the affidavit that the Vectren's representative reviewed a photo or photos of markings to support the affidavit's uncontested narrative.

{¶ 46} Similarly, the records the plaintiff submitted regarding the repair work costs are unopposed. In my opinion, it is overly critical to intricately dissect the records that additionally support the affidavit's narrative that they "accurately reflect the cost to [p]laintiff of $6,475.50 to repair the damage." But even if one were to determine that plaintiff did not sufficiently support its damages, summary judgment on liability would be appropriate and the matter should be remanded only for a damage hearing.

{¶ 47} The uncontested affidavit submitted by Vectren does not raise a genuine issue of material fact, and I would affirm the judgment of the trial court. Accordingly, I

dissent.

Copies mailed to:

Amanda Rasbach Yurechko
Thomas R. Yocum
Hon. Gregory F. Singer